**WALT DISNEY PRODUCTIONS,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**WALT DISNEY PRODUCTIONS,**
**Appellee,**

v.

**UNITED STATES of America,**
**Appellant.**

Nos. 72–1052, 72–1076.

United States Court of Appeals,
Ninth Circuit.

May 29, 1973.

Rehearing Denied July 31, 1973.

John Cooley Baity (argued), Richard Sayler, Roy W. McDonald, of Donovan, Leisure, Newton & Irvine, New York City, John J. Wilson, Leon S. Angvire, of Hill, Farrer & Burrill, Los Angeles, Cal., for appellant Walt Disney Productions.

Stephen Schwarz (argued), Tax Div., William D. Keller, U. S. Atty., Scott P. Crampton, Asst. Atty. Gen., Charles H. Magnuson, Mason C. Lewis, Asst. U. S. Attys., Meyer Rothwacks, Chief, Appellate Section, Bennet N. Hollander, Dept. of Justice, Washington, D. C., for appellee United States.

Before TRASK and GOODWIN, Circuit Judges, and EAST,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

The government appeals a district court judgment in a tax-refund case allowing Walt Disney Productions to take an "investment credit" on motion-picture negatives produced in 1962. The taxpayer cross-appeals from that part of the judgment which reduced the basis of the films for purpose of the credit.

The district court held that the films were "tangible personal property" within the meaning of Internal Revenue Code of 1954; that they had a useful life of more than eight years; and that they were depreciable. The films were thus eligible for the investment credit. The Commissioner contends that the films were not "tangible personal property" within the meaning of Int.Rev.Code of 1954, § 48(a)(1)(A), and that they did not have a useful life of eight years.

The district court, in allowing Disney to take investment credit, did not allow it to take the credit on the full basis Disney used for depreciation purposes, but limited Disney to "those costs which are directly related to the finished negative," 327 F.Supp. 189, 192–193 (C.D. Cal.1971). This figure was defined by multiplying hourly labor and certain other costs by a fraction the numerator of which was the footage of the final film and the denominator of which was the total footage shot. Disney's cross-appeal challenges this limitation of allowable costs for investment-credit purposes.

## I. INVESTMENT CREDIT

The negatives are used to make prints, which are copyrighted, and which are exhibited in theaters or on television. The negatives are not copyrighted. They are tangible, and they are personal property. They thus appear to be eligible for the credit. However, the Commissioner relies on Treas.Reg. § 1.48–1 (f), adopted in 1964, for the proposition that all the costs of production of the negative, except the negligible costs of the raw film, are to be allocated to the intangible copyright eventually procured on the positive print. Treas.Reg. § 1.-48–1(f) provides:

> *"Intangible Property.* Intangible property such as patents, copyrights, and subscription lists, does not qualify as section 38 property. The cost of intangible property in the case of a patent or copyright, includes all costs of purchasing or producing the item patented or copyrighted. Thus, in the case of a motion picture or television film or tape, the cost of the intangible property includes manuscript and screenplay costs, the costs of wardrobe and set design, the salaries of cameramen, actors, directors, etc., and all other costs properly includible in the ba-

---

* The Honorable William G. East, United States District Judge for the District of Oregon, sitting by designation.

sis of such film or tape * * *. However, if tangible depreciable property is used in the production of such intangible property, see paragraph (b) (4) of this section."

■ We recognize that Treasury regulations, even interpretative regulations, "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes," Bingler v. Johnson, 394 U.S. 741, 750, 89 S.Ct. 1439, 1445, 22 L.Ed. 2d 695 (1969). However, we agree with the district court that the quoted regulation is invalid. It is plainly inconsistent with the expressed purpose of the applicable statute as shown by the legislative history.

■ In attributing all of Disney's labor and production costs of the negatives to the copyrighted print, the regulation defeats the purpose of the credit. For example, the same regulation, if applied to a production machine in an automobile factory, would deny the investment credit on all but the material costs of a machine developed and patented for use in the manufacturing plant although the amount paid to the inventor for the idea of the machine was insignificant and the bulk of the costs of the machine were the ordinary labor and engineering costs of its production. Disney argues that its film negatives, like the hypothetical production machines, are standardized units of depreciable property which Disney uses to produce other products, the positive prints, and that the attribution of all of the value of the film to the copyright, like the attribution of all the value of a machine used in production to a patent eventually procured on it, is unwarranted. We agree.

It is evident from a reading of the legislative history of the investment credit that Congress intended the credit to be allowed to those in Disney's position. Exhibit statements of legislative intent that films can qualify as tangible depreciable property are found: in the Senate Finance Committee report on the 1971 restoration of the investment credit;[1] in the discussion in the House on the 1971 Act in a statement by Chairman Mills of the House Committee on Ways and Means in response to a specific question from the floor, 117 Cong.Rec. 34894 (1971); and in the House debates on the 1971 Act conference report, again in a statement by Chairman Mills on the House floor in response to a specific question, 117 Cong.Rec. H-12127 (daily ed. Dec. 9, 1971).

■ The government urges that this legislative history is irrelevant because the 1971 Act changed prior law, or at least that the history is entitled to little weight because "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). However, although the 1971 re-enactment of the investment credit did change prior law in several ways, see, e. g., Revenue Act of 1971, Pub.L. No. 92–178, § 104(c), 85 Stat. 497, 501, it did not change the phrase "tangible personal property" as used in the 1962 Act, Int.Rev.Code of 1954, § 48(a)(1) (A). And, while subsequent legislative history normally is not of controlling weight, it should not be ignored when it is clearly relevant. Haynes v. United States, 390 U.S. 85, 87 n. 4, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); Fribourg Navigation Co. v. Commissioner, 383 U.S. 272, 283, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966); Sioux Tribe of Indians v. United States, 316 U.S. 317, 329–330, 62 S.Ct. 1095, 86 L.Ed. 1501 (1942); Minot Federal

1. "As previously indicated the investment credit is generally available for depreciable tangible personal property. Questions have arisen, however, whether motion picture and television films are tangible (as distinct from intangible) personal property eligible for the credit. A court case decided the question in favor of the taxpayer. The committee agrees with the court that motion picture and TV films are tangible personal property eligible for the investment credit." S.Rep. No. 92–437, 92d Cong., 1st Sess. 34, 1971 U.S. Code Cong. and Adm.News, p. 1941 (1971).

Savings & Loan Ass'n v. United States, 435 F.2d 1368, 1371 (8th Cir. 1970).

In this case we give subsequent legislative history special weight, because the inferences flow not from Congressional action or inaction on amendatory legislation, but from explicit Congressional statements of the meaning of a phrase which was unchanged during the period in question. In addition, Representative Mills was Chairman of the House Committee on Ways and Means both in 1962 and in 1971, and many members of the Senate Finance Committee served in both years. The statements by the Finance Committee and by Chairman Mills demonstrate that the Commissioner's regulation was contrary to the Congressional intent. We hold it invalid insofar as it denied an investment credit on the films in question.

## II. EXTENT OF CREDIT

■ ■ The government argues that even if the films are tangible personal property they are not entitled to the full investment credit because the films did not have a useful life of eight years or more. The government relies heavily on the difference between Disney's estimates of the useful life of the films for investment credit purposes and the period computed from Disney's "income life" estimates for depreciation purposes. However, depreciation and investment credit estimates need not be the same. Triangle Publications, Inc., 54 T.C. 138, 152–153 (1970), acquiescence, 1972–1 Cum.Bull. 2; Rev.Rul. 72–76, 1972–1 Cum.Bull. 13. The estimate of the useful life of the films presented a difficult factual problem. The district court's resolution was not "clearly erroneous."

## III. CROSS APPEAL

■ Disney's cross appeal challenges the district court's ruling limiting the basis of the films for investment credit purposes to less than their basis for depreciation. We hold that this limitation was unwarranted.

There is no indication that the term "basis" as used in § 46(c)(1)(A) was to

have other than its customary meaning as including the whole cost of the property produced. Int.Rev.Code of 1954, § 1012. Indeed, the requirement in § 48 (g), repealed, Revenue Act of 1964, Pub. L. No. 88–272, § 203(a)(1), 78 Stat. 33, that the basis for purposes of depreciation shall be reduced by the amount of the investment credit compels the conclusion that "basis" was not intended to have an idiosyncratic meaning in § 46 (c)(1)(A). Accordingly, the judgment of the district court is modified to allow the taxpayer to use its depreciation basis to compute its investment credit.

Affirmed as modified.