Don L. ANTHONY, Jr., Plaintiff,
v.
BASIC AMERICAN FOODS,
INC., Defendant.

No. C 84–1228 TEH.

United States District Court,
N.D. California.

Nov. 15, 1984.

Michael J. Tonsing, Asst. U.S. Atty., Marshall Salzman, Staff Atty., Dept. of Labor, San Francisco, Cal., William H. Berger, Dept. of Labor, Atlanta, Ga., for plaintiff.

F. Bruce Dodge, Karl Olson, Morrison & Foerster, San Francisco, Cal., for defendant.

### ORDER

THELTON E. HENDERSON, District Judge.

In this action both parties have moved for summary judgment on the question of whether the defendant violated the Veterans Reemployment Rights Act. The motion was taken under submission by the Court without oral argument on November 5, 1984. For reasons discussed below, the Court holds that plaintiff is entitled, as a matter of law, to prevail on this question. The Court also denies defendant's summary judgment motion on the question of whether its liability to plaintiff terminated with the sale of its Redwood City distributorship.

*Discussion*

The case turns on the interpretation of the Veterans Reemployment Rights Act ("The Act"), specifically 1) whether its protections extend to leaves for reservists as long as 4½ months or whether it is limited to leaves of 3 months duration and 2) if there is no strict 3 month limit, was the plaintiff's leave here nonetheless "unreasonable?"

1) *Is there a three month limit on leaves of absence?*

The relevant portions of the Act, 38 U.S.C. § 2021 *et seq.*, are as follows: Section 2024(d), which refers to the rights of reservists and National Guardsmen, provides that

Any employee ... shall upon request be granted a leave of absence for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training or upon such employee's discharge from hospitalization incidental to that training, such employee shall be permitted to return to such employee's position with such seniority status, pay and vacation as such employee would have had if such employee had not been absent for such purpose.

Section 2021(b)(3), also applicable to reservists and Guardsmen states that

Any person ... shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces.

Defendant's central argument is one of statutory construction. Admittedly, there is no express language in § 2024(d) which says that only a leave of absence for 3 months or less shall be granted. However, 2024(d) applies to employees not covered by 2024(c). Subsection (c) in turn provides that a reservist who is ordered to an initial training period of not less than 3 months shall be entitled to reemployment rights and benefits. Thus, defendant says, 2024(d) applies to short-term training periods; 2024(c) applies to periods over 3

months; and plaintiff's 4½ month leave was therefore outside the coverage of section (d).

Plaintiff says that by its express terms, the statute places no limit on the time, nature or frequency of training which will entitle reservists and National Guardsmen to reemployment rights. The distinction between (c) and (d), plaintiff continues, is not based on length of training but rather the *type of training.* Section (c) refers to *initial* active duty for training; section (d) deals with active duty for training or inactive duty training.

The case law on this precise issue, despite the protestations of the parties, is not dispositive. Both sides find unwarranted significance from the fact that no court has either 1) upheld a leave over 3 months or 2) denied a leave over 3 months on the grounds that it was unauthorized by the statute. Basically, the issue has not been squarely confronted.

The strongest argument raised by the defendant is based on language from the Supreme Court's opinion in *Monroe v. Standard Oil Co.,* 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981). There the Court was considering a discrete issue: whether, for an employee who went on *weekend and summer (2 weeks) training sessions,* an employer was required by § 2021(b)(3) to provide a preferential work schedule. The Court answered that question in the negative, and in the course of its opinion, set forth its view of the structure of the Act. The Court noted that in 1960 a new section had been enacted to deal with "employees who had military obligations less than three months," and that this section was now codified at 38 U.S.C. § 2024(d). The same remark appears in the dissent. From this statement, defendant argues that a 3 month limitation is the proper interpretation of the statute.[1]

In response, plaintiff makes two arguments. First, he quite accurately notes

that the Supreme Court's discussion of § 2024(d) in *Monroe* was dicta. Second, he points to recent action by Congress dealing with this issue. The background of that Congressional action is as follows: The Department of Labor, which has the responsibility for administering the Act, traditionally adhered to the view that the statute imposes no restrictions on the length of training periods for which the employee is protected. In 1982, the Department reversed its position and issued a policy memorandum limiting that protection to reservists who had no more than 90 days of training duty every three years. In response, the House passed legislation which would have clarified the period for which an employer must grant a leave of absence under 2024(d), but the Senate never acted on the measure. Subsequently, in the report accompanying separate legislation (the Veterans' Compensation, Education, and Employment Amendments of 1982), Congress addressed the issue of a 90-day limit by stating that the:

> committees do not believe that the 90-day limit that the Labor Department has imposed on that period, based on the Solicitor of Labor's October 8, 1981, interpretation of § 2024 of title 38, is well-founded either as legislative interpretation or application of the pertinent case law. Accordingly, the Committees urge the ASVE, upon assuming the responsibility for the reemployment rights program provided in the compromise agreement, to review the situation and take appropriate action to eliminate this arbitrary limitation.

1982 *U.S. Code Cong. & Admin.News* 2877, 3012, 3020.

■ The Court finds this Congressional statement persuasive, and concludes that Congress did not intend there to be a strict three month limitation in § 2024(d). Defendant's attempts to minimize the significance of Congress's response are not con-

**1.** Defendant cites other cases which contain similar statements about the coverage of § 2024(d). These are not very persuasive, though, because 1) the language in all except

one is drawn directly from the *Monroe* case and 2) the language is all dicta, since none of the courts had before them the question of the meaning of section (d).

vincing. Essentially, defendant argues that because the 1982 Congress did not change existing law, its comments are precatory and entitled to no weight. Defendant cites Supreme Court doctrine to the effect that the longstanding judicial interpretation of a law, coupled with Congress's failure to reject the interpretation, "argues significantly in favor of that interpretation";[2] and, moreover, that the "views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."[3]

Defendant's contentions are misleading in all respects. First, this is not a case where existing law had to be rewritten in order for a Congressional statement to have significance. What Congress did was to amplify the meaning of a statutory phrase that *remained unchanged.* Similarly, this is not nearly a case where there was any "longstanding judicial interpretation" of the law. The *Monroe* opinion, on which defendant primarily relies, was handed down in 1981. More important, *Monroe,* as well as the other cases defendant cites, never "interpreted" section (d); they merely referred to that section's provisions in dicta.[4] In addition, as plaintiff notes, the Ninth Circuit has held that subsequent Congressional interpretation of a statute which remains unchanged is entitled to *"special weight,* because the inferences flow not from Congressional action or inaction or amendatory legislation, but from explicit Congressional statements of the meaning of a phrase which has remained unchanged during the period in question." *Walt Disney Productions v. United States,* 480 F.2d 66, 69 (1973), *cert. denied sub nom., United States v. Walt Disney*

*Productions,* 415 U.S. 934, 94 S.Ct. 1415, 39 L.Ed.2d 493 (1974) (emphasis added). In the *Walt Disney* case, the Ninth Circuit was well aware of the hazards of relying on subsequent legislative statements for inferring the intent of an earlier Congress, but said it would not ignore such statements where they were clearly relevant. *Id.* at 68.

### 2) *Was plaintiff's leave request reasonable?*

Having decided that the 4½ month leave request is not outside the scope of the Act, we next address whether it should be judged by a standard of reasonableness. The case most closely analagous to this one, *Lee v. City of Pensacola,* 634 F.2d 886 (5th Cir.1981), adopted such a test, holding that both the length of time and circumstances surrounding the request and the circumstances existing when the reemployment is sought must be reasonable.[5] Both parties accept the approach used by the *Lee* court, although the plaintiff says that the *Lee* test needs to be modified in light of the Supreme Court's statement in *Monroe* that employers may not rid themselves of the "inconveniences and productivity losses" caused by reservists by discharging them. *Monroe v. Standard Oil Co., supra,* 452 U.S. at 565, 101 S.Ct. at 2519.

■ The Court agrees that the plaintiff's leave request should be evaluated according to whether it was reasonable both in light of 1) the circumstances giving rise to the request and 2) the requirements of the employer. However, we are persuaded by plaintiff that in making this analysis, there should be a presumption that the leave is

---

**2.** Quoting from *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 733, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975).

**3.** *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960).

**4.** The court in *Lee v. City of Pensacola,* 634 F.2d 886 (5th Cir.1981), while holding that a 5½ month leave request was not protected by § 2024(d), did not interpret section (d) in the manner suggested by defendant, i.e., limited by its terms to 3 months.

**5.** The *Lee* court specifically held that Congress "did not intend to endow a reservist with 'unreasonable powers' over his employer or cause his employer unreasonable hardship. The training period for which leave of absence is given must be reasonable both in the context of the reservist's military obligation and the requirements of the employer." 634 F.2d at 888 (quoting from the District Court opinion.)

protected under the Act. As plaintiff notes, "It has repeatedly been said that the acts of Congress providing for reemployment of military persons are to be construed liberally in favor of the veteran." *Lee v. City of Pensacola, supra,* 634 F.2d at 889, and cases cited therein. Moreover, Congress has very recently given strong expression to its view of the importance of the National Guard and Reserve forces. In the 1983 Department of Defense Authorization Act, Congress noted, *inter alia,* that in the current period "attracting and retaining sufficient numbers of qualified persons to serve in the Guard and Reserve is a difficult challenge"; "that *the support of employers* and supervisors in granting employees a leave of absence from their jobs to participate in a military training program without detriment ... is *essential to the maintenance of a strong (force),*" and *urged and requested employers to abide by the Act and grant leaves for military training.* See 1982 *U.S. Code Cong. & Admin. News* at 1587 (emphasis added).

In making an evaluation of "reasonableness," defendant first attempts to find fault with plaintiff for the circumstances surrounding his leave request. Thus, defendant says, plaintiff's need for Ordnance Training in early 1983 was pressing only because he had delayed for two years applying for this training; plaintiff ignored alternatives involving shorter training periods; plaintiff failed to thoroughly explore the possibility of taking the course, at least in part, by correspondence; and plaintiff chose the earliest of three possible courses. Defendant notes that the plaintiff never actually sought permission from his employer, and never discussed how his responsibilities would be met in his absence.

■ The Court does not believe that these facts surrounding plaintiff's leave request make it unreasonable. Given Congress's clear desire for the maintenance of a strong National Guard force, the Court feels it is inappropriate for us to closely scrutinize plaintiff's actions, and require perfect justification for them. Plaintiff's brief, supported by the Declaration of Major Carlos Ramirez, Chief of Officer Personnel for the California Army National Guard, satisfactorily explains the requested leave:

1) there was an "immediate and critical need" for plaintiff to qualify as an Ordnance officer in his unit 2) correspondence training courses were rarely granted [6] and 3) plaintiff realistically "had no choice" but undergoing training if he wanted to remain as a commissioned officer. Defendants rely heavily on *Lee v. City of Pensacola, supra,* but that case is distinguishable. In *Lee,* after the plaintiff had been granted a leave request of approximately 1½ months, he sought permission to extend the leave by an additional 4 months just a week before he was due back at work. The court there was troubled by the fact that the plaintiff had been negotiating with his military superiors for an extension of his training period without communicating this to his employer, and also noted that it was *not* a case where his original leave request was denied. Moreover, the court emphasized that it was *not necessary* for the plaintiff to complete the entire training in that particular year, but that he could seek additional training in later years or qualify for promotion by correspondence courses. While admittedly the plaintiff here might have proceeded differently, this does not render his actions unreasonable.

Regarding the impact on the defendant's operations, defendant argues that its Redwood City distributorship was small and could not withstand the loss of one of its workers, especially during the busy summer season. While it could compensate in the short run by paying its other workers overtime and hiring an independent contractor, defendant says its only realistic alternative was to hire a permanent replacement for the plaintiff. The defendant says that once plaintiff returned from

---

**6.** Even defendant acknowledges that a correspondence course might not have been approved, is used by only a small portion (20%) of trainees, and can take a long time (often up to two years) to complete.

training and requested reemployment, rehiring him would have meant either firing its new employee or creating a superfluous position, neither a viable option.

■ While plaintiff's leave undoubtedly placed strains on the defendant's operation, we are not persuaded that this entitled the defendant to refuse his application for reemployment. *Lee v. City of Pensacola, supra,* the primary case cited by defendant for the "rule of reasonableness," does not support this proposition. It is true, as defendant notes, that an employer cannot be forced to create a useless job in order to rehire a veteran or reservist. However, there is a clear line of authority holding that an employee cannot be refused reinstatement because *another person has been hired to fill the position temporarily, Kay v. General Cable Corporation,* 144 F.2d 653, 656 (3rd Cir.1944), or because *no opening exists at the time of application for reemployment. See e.g., Davis v. Halifax Cty. Sch. System,* 508 F.Supp. 966, 968–69 (E.D.N.C.1981); *Jennings v. Illinois Office of Education,* 83 CCH Labor Cases ¶ 10,408, 17,628 (S.D.Ill.1978), *aff'd,* 589 F.2d 935 (7th Cir.1979), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). The cases have not disapproved of the bumping of another employee in favor of the returning veteran. *Id.*

■ The only limited exception to reinstatement which the courts have countenanced is where the prior job no longer exists: i.e., where the position has been abolished, or a reduction in the work force taken place which would have clearly included the reservist, or the business itself has been discontinued. When plaintiff applied for reinstatement, none of these exceptions were relevant to the defendant (the last one became relevant after defendant sold its distributorship to ICF, which is discussed below). Thus, the Court's conclusion is that even though Basic was inconvenienced by plaintiff's departure, it had an obligation to rehire him once his training obligations were concluded.[7]

### 3) *Defendant's Liability*

Having concluded that plaintiff's leave request was protected under the Act, and that defendant had an obligation to rehire him, we now turn to the question of defendant's liability. In February, 1984, the Redwood City distributorship in which plaintiff was employed was sold to Interstate Convenience Foods (ICF), a corporation with no ownership or management ties to the defendant. Defendant argues that this sale terminated whatever liability it may have had to the plaintiff.

■ Defendant is correct in arguing that the sale of a business in which a veteran had been employed constitutes such a change in the employer's circumstances as to make reemployment "impossible or unreasonable." *See* 38 U.S.C. § 2021(a)(B)(i). Had defendant sold its distributorship in August, 1983, it would have been relieved of its obligation to rehire the plaintiff. That is not the case here, however, and plaintiff contends that *but for* defendant's action, he would have been employed by the defendant and had at least an opportunity to continue in that position with ICF. ICF did tell defendant during their negotiations that all of defendant's employees would be given a chance to continue employment, and one of defendant's workers was hired by ICF.

■ Defendant responds that this argument raises the wrong issue—the *possibility of work with ICF* rather than the *right to continued employment with defendant.* Defendant's position has substantial merit to it. Given that ICF was not a successor in interest to the defendant, and that there was no contractual agreement between them regarding the retention of defendant's employees, the Court believes

---

**7.** Other factors argue in favor of plaintiff as well: 1) his position had been vacant for one year prior to his hiring, 2) defendant did manage to get by for over three months from April 29 to August 8, 1983, before a replacement for him was hired; and 3) plaintiff did give his employers two months notice of his intention to leave, giving them time to find alternative arrangements.

that the defendant should be relieved of its liability following the February, 1984 transfer of ownership unless plaintiff can demonstrate that he would have been retained by ICF. However, the burden must be on plaintiff to prove this: not just that he had the *chance* to be hired by ICF, but *that it was more likely than not* that this would have occurred. The Court will grant plaintiff's request that he be allowed to conduct further discovery on this issue in order to determine when defendant's liability terminated.

However, before any such discovery is commenced, the Court ORDERS that this case be referred to Magistrate Claudia Wilken for a mandatory settlement conference. All discovery on the issue of defendant's liability shall be stayed until this settlement conference is held.

IT IS SO ORDERED.