**Bruce A. BOTTGER, Plaintiff,**

v.

**DOSS AERONAUTICAL SERVICES, INC.; Aviation Contractor Employees, Inc., Defendants.**

**Civ. A. No. 84–H–81–S.**

United States District Court, M.D. Alabama, S.D.

March 29, 1985.

John C. Bell, U.S. Atty., D. Broward Seg-rest, Asst. U.S. Atty., Montgomery, Ala., U.S. Dept. of Labor, Office of the Sol., Bobbye D. Spears, Regional Sol., and William H. Berger, Atlanta, Ga., for plaintiff.

Kenneth T. Fuller, Enterprise, Ala., for defendants.

## MEMORANDUM OPINION

HOBBS, Chief Judge.

Plaintiff in this cause seeks an adjustment of his seniority and restitution for wages and other benefits lost due to an alleged violation of his rights under the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021, *et seq.* There being no issue as to any material fact in this case, the case has been submitted to the Court on a joint stipulation of fact. This Court has jurisdiction pursuant to 38 U.S.C. § 2022. The Court holds that plaintiff is entitled to a judgment in his favor in the amount of $4,857.59, with interest. The Court now enters its findings of fact and conclusions of law pursuant to Rule 52 Federal Rules Civil Procedure.

## FINDINGS OF FACT

The Court is satisfied that the joint stipulation of facts entered into and submitted by the parties sets forth all of the relevant facts and the Court adopts said stipulation as its findings of fact relied upon in arriving at its conclusions of law.

## CONCLUSIONS OF LAW

The Court's analysis is in three parts. First, the Court considers whether plaintiff's leave request was reasonable. Secondly, it considers what effect plaintiff's resignation and subsequent voluntary extension on active duty has on defendants' liability. Finally, it considers the issue of liability.

### Was Plaintiff's Leave Request Reasonable?

It is important to note the statutory bases around which this action revolves.

38 U.S.C. § 2024(d) provides in pertinent part:

Any employee ... shall upon request be granted a leave of absence for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training ... such employee shall be permitted to return to such employee's position with such seniority status, pay and vacation as such employee would have had if such employee had not been absent for such purposes....

38 U.S.C. § 2021(b)(3) provides:

Any person ... shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces.

The Court in *Lee v. City of Pensacola*, 634 F.2d 886 (5th Cir. Unit B 1981) adopted a "rule of reason" in analyzing cases arising under these statutory provisions. It recognized that the appropriate evaluative process is to consider whether "the length of time of such a leave for training and the circumstances surrounding the request for it as well as the circumstances existing when the officer returned to seek employment" were reasonable under the totality of the circumstances. *Lee, supra*, at 888. The instant case does not involve a refusal to re-employ so the second part of the *Lee* inquiry is not applicable here; however, a "reasonableness" under the totality of the circumstances approach is appropriate and has been applied.

■ In analyzing such a request, the Act is to be "construed liberally in favor of the veteran," *Lee, supra*, at 889; *Duey v. City of Eufaula, Alabama*, CA No. 79–149–N (M.D.Ala. Oct. 31, 1979). As plaintiff notes, this principle was further developed in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), when the United States Supreme Court stated that § 2024(d) provides that "employees must be granted a leave of absence for training and, upon their return, be restored to their position 'with such seniority status, pay and vacation' as they would have had if they had not been absent for training." *Monroe, supra*, at 555, 101 S.Ct. at 2514. The Court further recognized that "the nondiscrimination requirements of (§ 2021(b)(3) ) impose substantial obligations upon employers." It stated, however, that while "[T]he frequent absences from work of an employee-reservist may affect productivity and cause considerable inconvenience to an employer who must find alternative means to get necessary work done, Congress has provided ... that employers may not rid themselves of such inconveniences and productivity losses by discharging or otherwise disadvantaging employee-reservists solely because of their military obligation." *Monroe, supra*, at 565, 101 S.Ct. at 2519. While plaintiff would apparently go so far as to read *Monroe* as eliminating considerations of reasonableness with respect to hardships caused the employer, this Court is not prepared to go so far. Rather, it is this Court's opinion that *Monroe* is better read as reinforcing the principle that the Act is to be construed liberally in favor of the employee reservist, while *Lee's* "reasonableness" concept remains as the framework for analysis.

This Court finds the variation on *Lee* applied by the Court in *Anthony v. Basic American Foods, Inc.*, 600 F.Supp. 352 (N.D.Ca.1984) to be an appropriate form for an evaluation of the reasonableness of

the request in the instant case. The *Anthony* court stated that such a leave request should be evaluated as to whether it was reasonable "in light of: 1) the circumstances giving rise to the request and 2) the requirements of the employer." The court took the approach throughout its inquiry that there is a presumption that the leave is protected under the Act. This is clearly in line with the "liberally construed in favor of the veteran" language in *Lee* and shall be adopted by this Court.

 Given this framework, the Court considers the parties' contentions. Defendants contend with respect to the first prong of *Anthony*, the "circumstances giving rise to the request," that plaintiff's request was unreasonable in that plaintiff had just returned from a two-week tour of active duty and the requested 26-day leave period was not of an obligatory nature. Plaintiff responds that while the leave was not required of him by the Army, it was a "one-shot deal" which would enhance his reserve career. Moreover, the law is clear that the Act applies to training duty whether required or not, *Lee, supra,* at 889; and "an employee is covered by the re-employment provisions of the Act regardless of whether he volunteers for active duty or is compelled to perform such duty" *Nieman v. Alpine Brook Triangle Corp.,* 69 CCH Labor Cases ¶ 12,940 at 24,994 (S.D.N.Y. 1972). Defendants also complain that plaintiff failed to discuss with Doss the fact that the training was not mandatory. The Court finds no merit in such a complaint and finds that the form in which plaintiff made his request comported with the Act's requirements. See *Nieman, supra,* at 24, 994. In short, the circumstances giving rise to the request were reasonable and within the contemplation of the Act.

Defendants' contentions with respect to the second prong of the *Anthony* "reasonableness" evaluation, the consideration of the "requirements of the employer," have substantially more merit. Defendants again point out that plaintiff had just returned from a two-week military leave, that

his request for the 26-day leave came during the "summer camp" season, that thirty to fifty percent of its employees were also reservists, and that plaintiff's absence would further exacerbate an already difficult situation in which management had been filling in for flight instructor reservists with complaints from the union for so doing.

Defendants rely on *Lee, supra,* in support of their position that the request was unreasonable in light of the hardship to the employer. The Court finds this to be a rather compelling basis for their argument in general terms but finds that it fails in this case for three reasons. First, *Lee* is factually distinguishable from the instant case. Secondly, a reading of *Lee* and its "rule of reason" must be supplemented by *Monroe, supra,* insofar as it discusses the relative weight to be given to the inconveniences caused to the employer vis-a-vis the important service performed by the reservist and encouraged to be performed by Congress. Thirdly, there is a good bit of case law in this area in which courts have held such requests for leave to be "reasonable" where the totality of the circumstances was far more questionable to the concept of "reasonableness" than that present in this case.

The basic factual distinction between this case and *Lee, supra,* is that *Lee* did not involve a situation in which the plaintiff was denied the leave originally requested, *Lee, supra,* at 888; while that is clearly what occurred here. This is a fundamental difference for in this case all which occurred, including the resignation and subsequent extension on active duty flowed from Doss' denial of plaintiff's request. But for that denial, which this Court finds today to have been a violation of the Act, there would be no case before the Court on this matter. Secondly, the period of time involved in the two cases varies greatly. In *Lee,* the plaintiff had been on a 59-day leave when he requested an extension for four months with a date chosen apparently wholly to suit his own convenience. *Lee,* at 888. In the instant case, plaintiff had just

returned from his two week "summer camp" duty, but even assuming this to be relevant (which is arguable since his request for the 26-day period was evidently unrelated to the summer camp and was clearly not a foreseeable "extension"), his subsequent request was only for twenty-six days and the opportunity was apparently only to be offered at that time with no other dates available. (Bottger dep. at 49, 70, 73–74)

With respect to *Monroe, supra,* as has already been indicated, it can be said to qualify *Lee* to a degree without supplanting it for it makes clear that Congress anticipated that the Act would cause inconveniences and possible decreases in productivity for employers but determined that employers could not respond to such effects by denying seniority to employee reservists "solely because of the military obligations," *Monroe, supra,* 452 U.S. at 565, 101 S.Ct. at 2519, which is what happened here.

Finally, with respect to other cases in this area, courts have found with sound reasoning that requests were reasonable (and therefore protected under the Act) which: 1) sought a four and a half month leave for non-obligatory training causing the employer to fire a new employee or create a superfluous position upon the reservist's return, *Anthony, supra;* 2) sought a six-week leave for training sought by plaintiff on his own initiative, after having already taken approximately six weeks of military leave earlier in the year. See *Green v. Spartan Stores, Inc.,* 95 CCH Labor Cases ¶ 13,847 at 22,470 (W.D.Mich. 1982).

In the final analysis, while it would appear that plaintiff's requested 26-day leave, coming on the heels of a two-week leave, at a busy time of year for such leaves, and for a longer than usual period of time may well have caused Doss some serious inconveniences, it nevertheless was a reasonable request as a matter of law and was protected by the Act. Doss' refusal to grant said request was in violation of the Act.

## The Effect of Plaintiff's Resignation and Subsequent Extension on Active Duty

It is well settled that a resignation prior to entering upon active duty in the military service does not preclude the right to re-employment under the Act, since the purpose of the resignation is directly related to entry in the Armed Forces. *Duey v. City of Eufaula, supra.* See also *Trulson v. Trane Co.,* 738 F.2d 770 (7th Cir.1984); *Winders v. People Express Airlines, Inc.,* 595 F.Supp. 1512, 1518 (D.N.J.1984); *Micalone v. Long Island R. Co.,* 582 F.Supp. 973, 978 (S.D.N.Y.1983). In this case the factor of plaintiff's resignation is of even less relevance, since he was denied the requested leave and faced the prospect of being charged with unexcused absences (Bottger dep. 49–50, 52) which under the employee handbook could have led to his termination (Ex. G at p. 7). He resigned as a result of being faced with that prospect. Furthermore, its only relevance would be under the collective bargaining agreement or other company policy and clearly the Act prevails over either. See *Hembree v. Georgia Power Co.,* 637 F.2d 423, 429 (5th Cir. Unit B 1981).

Similarly, plaintiff's voluntary extension on active duty is irrelevant, for the record would clearly indicate that but for the illegal refusal of plaintiff's request he would not have resigned and but for his resignation he would not have extended his service on active duty. There is no need therefore for the Court to consider the reasonableness of the length of time of such extension. The Court notes, however, that the court in *Anthony, supra,* addressed the question of whether there is a 90-day limit on such a leave of absence under the Act and found that none exists, citing rather persuasive legislative history on the subject. Accordingly, plaintiff's resignation and subsequent voluntary extension are of no moment to the outcome in this case.

## Liability of the Parties

The parties have stipulated to the fact that each of the employers is a succes-

sor in interest to the contract at Fort Rucker, Alabama, pursuant to the Service Contract Act, 41 U.S.C. § 351 et seq. (sic) They have further stipulated that if plaintiff prevails on the liability issue, his loss of wages is $4,857.59. This represents the lost wage differential between May 16, 1979 and October 1, 1983 plus lost bonuses for 1978 through 1981. Pursuant to said stipulation the loss is attributable as follows: Doss Aviation, Inc., $512.00; Doss Aeronautical Services, Inc., $3,833.53; and Aviation Contractor Employees, Inc., 512.-00. The Court has considered whether these two "successor corporations" should be held liable for the violative conduct of Doss under the framework set forth in *In re National Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir.1983) and *Chaltry v. Ollie's Idea, Inc.*, 546 F.Supp. 44 (W.D.Mich.1982) and concludes the following: The stipulated facts indicate that while Doss and DASI had common ownership, all three employers had the same "flight supervisory personnel, regular employees, equipment or facilities, labor policy or working conditions and the same function ... was performed." (Stipulation No. 5) Both DASI and ACE clearly had notice of the violation of the Act and of the claim thereunder. The remaining *Chaltry* factors are likewise satisfied by both; accordingly, judgment is to be awarded in favor of plaintiff and against both defendants which shall be jointly and severally liable for the amount of $4,857.59, plus accrued interest from May 16, 1979.

The Court finds there to be no merit in defendants' laches claim for there has been no sufficient showing of prejudice to the defendants by plaintiff's action. See *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir.1979), *cert. den.* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980), and the Court finds none to have resulted.

The Court grants this judgment in plaintiff's favor fully cognizant of the fact that the employer was faced with a very difficult situation. The Court is bound in its determination, however, by the Act and the policies encompassed therein. Congress has established a clear policy as to how such difficult situations must be resolved and defendants have acted in contravention of that policy.

A separate judgment will be entered in accordance with this memorandum opinion.

## JUDGMENT

In accordance with the attached memorandum opinion, it is ORDERED, ADJUDGED and DECREED that plaintiff Bruce A. Bottger have and recover from defendants Doss Aeronautical Services, Inc. and Aviation Contractor Employees, Inc., jointly and severally, the sum of $4,857.59, plus accrued interest from May 16, 1979.

It is further ORDERED that (1) the motion to amend Doss' answer is granted, (2) the parties' motion to amend the Joint Stipulation of Facts is granted, and the summary judgment motions of the parties are moot.

It is further ORDERED that the court costs incurred in this proceeding are taxed against defendants, for which execution may issue.