Cornelius A. CRONIN, Plaintiff,

v.

The POLICE DEPARTMENT OF the CITY OF NEW YORK, and the City of New York, Defendants.

No. 86 Civ. 7010 (JMC).

United States District Court,
S.D. New York.

Dec. 21, 1987.

17. 17 U.S.C. § 101 (1982).

William Berger, Dept. of Labor, Atlanta, Ga., Susan Johnston, Asst. U.S. Atty., New York City, for plaintiff.

Thomas C. Mansfield, Beth G. Schwartz, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Plaintiff's motion for summary judgment is granted. Defendants' cross-motion for summary judgment is denied. Fed.R.Civ.P. 56.

## BACKGROUND

Plaintiff Cornelius A. Cronin is a police officer employed by defendants The Police Department of the City of New York ["Police Department"] and The City of New York [the "City"]. Cronin was first employed by the Police Department on October 25, 1968. At the time of his initial appointment, Cronin was a member of the United States Marine Corps Reserves, having previously served on active duty.

On May 12, 1976, Cronin requested and received permission from the Police Department to transfer from the Marine Corps Reserves to the Air Force Reserves. The transfer was necessary in order for Cronin to receive training as a combat ready flight engineer on the C–141, a United States military cargo aircraft. Such training takes approximately 12 to 18 months. On May 30, Cronin requested and received an indefinite military leave of absence, to commence June 19.

Cronin served on active duty training with the Air Force Reserves from June 19, 1976 to August 8, 1977, at which time he was released from service. Between June 14 and August 5, 1976, Cronin was on paid military leave and paid vacation, and pension contributions were deducted from his salary. His unpaid military leave commenced on August 6, 1976. In 1977, Cronin received an additional 30 days of paid military leave. Following his release from duty, Cronin applied to be and was reinstated as a police officer with the Police Department. He worked in that capacity from August 8, 1977 to March 5, 1985.

On February 20, 1985, Cronin requested and received a second indefinite military leave of absence, to commence on March 3, 1985. The purpose of the military leave was to receive training as a flight engineer on the C–5, another United States military cargo aircraft. As with the C–141, flight engineer training for the C–5 requires approximately 12 to 18 months. Cronin served on active duty training in the Air Force Reserves from March 3, 1985 to April 5, 1986, at which time he was released from service. Between March 3 and April 26, 1985, Cronin was on paid military leave and paid vacation and pension contributions were deducted from his salary. His unpaid military leave commenced April 27, 1985. Upon his release, Cronin applied to be and was reinstated as a police officer with the Police Department.

Relying on section 242 of the New York Military Law, which allows government employees to take up to six months of military leave ["NYML § 242"], the City has granted Cronin pension credit for only the first six months of his 1976–1977 and 1985–1986 unpaid military leaves. In addition, the City has revised Cronin's initial appointment date from October 25, 1968 to July 3, 1970 to reflect that portion of his unpaid military leave for which the City is

unwilling to grant pension credit.[1]

## DISCUSSION

In this action, brought pursuant to the Veteran's Reemployment Rights Act, 38 U.S.C. §§ 2021–2026 ["VRRA"], Cronin seeks (1) pension credit for the entire time he was on military leave in 1976–1977 and 1985–1986; and (2) restoration of his initial appointment date to October 25, 1968 so as to make him eligible for vested interest separation and retirement with full benefits on October 25, 1988. Cronin argues that NYML § 242, the statute relied upon by the City in limiting Cronin's pension credit to six months for each military leave, is preempted by § 2024(d) of VRRA.

### A. *The Statutory Framework*

Section 2024(d) of VRRA provides in pertinent part:

Any employee [who is a member of a Reserve component of the Armed Forces] shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training, or upon such employee's discharge from hospitalization incident to that training, such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes.

38 U.S.C. § 2024(d).

NYML § 242(3) allows a government employee who is a reservist to obtain a military leave for up to six months in any four-year period. The City relies on NYML § 242(3) to support its argument that Cronin is entitled only to twelve months of

pension credit for his two unpaid leave periods.

Cronin's first argument is that NYML § 242(3) is preempted by § 2024(d) of VRRA because it places a six-month limitation on the duration of military leave when § 2024(d) carries no such limitation. The City concedes, as it must, that Cronin's pension benefits fall within the scope of § 2024(d) insofar as they relate to his military service, but is "troubled" by the fact that § 2024(d) contains no express limitation on the duration of military leave for which pension credit must be given. The City contends that NYML § 242(3) does not conflict with § 2024(d), but, rather, merely places a reasonable limitation on the duration of a reservist's term of military leave. Accordingly, the City argues, NYML § 242(3) is not preempted by § 2024(d) of VRRA.

### B. *The Doctrine of Preemption*

█ The City correctly points out that federal law may preempt state or local laws in either of two ways. First, federal regulation in a given area may be so pervasive that Congress explicitly declares that States are prohibited from regulating in that area. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). Second, "[e]ven if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute." *Id.* at 158, 98 S.Ct. at 994. A conflict will be found "where compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *see Ray*, 435 U.S. at 158, 98 S.Ct. at 994; *Jones v. Rath*

---

**1.** There appears to be some dispute as to the exact amount of time for which Cronin has been denied pension credit. But this dispute stems, however, from the fact that Cronin has not made the necessary employee contributions for the six-month periods for which the City is willing to grant pension credit. Cronin has expressed his willingness to make such contributions, but claims that the City has never advised him of the amount owing.

850

*Packing Co.*, 430 U.S. 519, 540–41, 97 S.Ct. 1305, 1317, 51 L.Ed.2d 604 (1977).

With these principles in mind, the Court examines the language of § 2024(d). It is by now axiomatic that "the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

■ It is clear, and the City concedes, that § 2024(d) contains no express limitation with respect to the duration of protected military leave for training. In fact, the statute requires an employer to grant leave "for the period required to perform active duty for training ... in the Armed Forces of the United States." 38 U.S.C. § 2024(d). Despite this broad language, the City argues that Congress intended § 2024(d) only to cover military leaves of up to 90 days. To support its view, the City relies, first, on a 1960 Senate Report accompanying passage of 50 U.S.C.App. § 459, the predecessor of § 2024(d).[2] The City argues that the Senate Report indicates that § 2024(d) was intended to cover training periods lasting "only a short period of time" such as "30, 60, or 90 days." Defendants' Memorandum In Opposition to Plaintiff's Motion for Summary Judgment at 12, 86 Civ. 7010 (JMC) (S.D.N.Y. June 25, 1987) (citing and quoting S.Rep. No. 1672, 86th Cong., 2d

Sess., *reprinted in* 1960 U.S.Code Cong. & Ad.News 3077, 3078).[3]

The City goes on to argue that, in the case of *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), the Supreme Court "held" that § 2024(d) was designed "to deal with problems faced by employees who had military training obligations lasting less than three months." *Id.* at 555, 101 S.Ct. at 2514; *see also United States v. New England Teamsters And Trucking Industry Pension Fund*, 737 F.2d 1274, 1278 (2d Cir.1984) (observing that § 2024(d) applies to "reservists with military training obligations lasting less than three months....").

There are several reasons why the City's arguments do not persuade the Court. First, with respect to *Monroe*, the passage quoted above was clearly *dicta*. *Monroe* involved an employee-reservist who worked at a plant that operated 7 days a week, 24 hours a day. Like other employees, the reservist was often scheduled to work weekends as part of a regular 40–hour workweek. Because he was required to perform his reserve duty on weekends, a conflict often arose between this duty and the reservist's regular work schedule. Although the employer granted the reservist leave for such weekends, in compliance with § 2024(d), the reservist claimed that he had been treated differently from other employees who were not reservists, in violation of § 2021(b)(3) of VRRA.[4] Thus, the Court had before it the specific issue of

**2.** Congress first extended reemployment rights to reservists returning from training duty in 1951, as part of an effort to strengthen the nation's reserve forces. *See Monroe v. Standard Oil Co.*, 452 U.S. 549, 555, 101 S.Ct. 2510, 2514, 69 L.Ed.2d 226 (1981). These protections were initially codified at 50 U.S.C.App. § 459(g)(3). Eventually, Congress separated out the rights of reservists going on initial active duty for training (§ 459(g)(3)) from those going on active duty for training or inactive duty training (§ 459(g)(4)). As a result of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the entire statutory scheme was recodified at 38 U.S.C. §§ 2021–2026. Section 459(g)(4) was recodified at 38 U.S.C. § 2024(d).

**3.** The quoted language in the Senate Report is actually preceded by the phrase "such as." It has been noted that the phrase " 'such as' is not

a phrase of strict limitation, but is a phrase of general similitude indicating that there are includable other matters of the same kind which are not specifically enumerated by the standard." *Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 327 (8th Cir.1981); *see Barber v. Gulf Publishing Co., Inc.*, 103 CCH Labor Cases ¶ 11,676, at 24,862 n. 5 (S.D.Miss.1986) ("With [the above] in mind, we think that the comments made in the Senate Report do not specifically exclude training lasting more than 90 days.").

**4.** Section 2021(b)(3) provides, in part, that a reservist "shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces." 38 U.S.C. § 2021(b)(3).

whether "an employer has a statutory duty [under § 2021(b)(3) ] to make work-scheduling accommodations for reservist-employees not made for other employees, whenever such accommodations reasonably can be accomplished." 452 U.S. at 551, 101 S.Ct. at 2512. The Court concluded, 5–4, that an employer had no such obligation.

Likewise, in *New England Teamsters*, the Second Circuit did not directly address the issue before the Court today. In that case, an employee-reservist on a two-week assignment with the National Guard was injured, and required approximately 14 months of hospitalization and recuperation. His employer refused to give him pension credit for the full term of military leave. The Second Circuit held that the language in § 2024(d) regarding hospitalization "incident to active duty for training" qualified the employee to receive pension credit for the full time he was on military leave.

Relying on *Monroe*, the Court construed § 2024(d) as requiring employers to grant leave for "military obligations lasting less than three months." 737 F.2d at 1278. It is significant to note, however, that when construing the broad language of § 2024(d) with respect to hospitalization, the court did not limit the employee's pension credit to 90 days. It is far from clear that, if confronted with the specific issue at hand, the Second Circuit would conclude that any military training lasting more than 90 days would fall outside the scope of § 2024(d)'s protection.

In addition, significant legislative developments with respect to § 2024(d) have occurred since the issuance of the 1960 Senate Report relied upon by the City. First, when amending VRRA in 1968, both the Senate and the House of Representatives issued reports containing a chart entitled "Reemployment Rights and Job Protection." Under the column "maximum periods of military service," the notations in both reports for 50 U.S.C.App. § 459(g) (now codified as 38 U.S.C. § 2024(d)) read "not applicable." *See* S.Rep. No. 1477, 94th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 3421, 3425; House Rep. No. 1303, 94th Cong., 2d Sess.,

at 6. Thus, when Congress reviewed VRRA in 1968, it declared that no time limit existed under § 2024(d). Again in 1974, when VRRA was recodified in its entirety from 50 U.S.C.App. § 459 to 38 U.S.C. § 2021 *et seq.*, Congress had an opportunity to enact limits on the duration of protected military leaves under § 2024(d), but chose not to do so.

An even more recent development indicates to the Court that Congress did not intend to limit the duration of protected military leaves to 90 days. Since 1952, the Department of Labor had maintained a longstanding interpretation that § 2024(d)

imposes no limitation on the number, frequency or duration of the training duty periods for which the employee has reemployment rights protection. *The need for such training is determined by the armed forces and they also determine its frequency and duration.* As long as the reservist continues to obtain the necessary orders, he continues to have statutory protection.

Department of Labor's Veterans' Reemployment Rights Handbook at 111 (1970 ed.) (emphasis added), *quoted in Barber v. Gulf Publishing Co., Inc.*, 103 CCH Labor Cases ¶ 11,676, at 24,863 (S.D.Miss.1986) [Available on WESTLAW, 1986 WL 611]. This interpretation had been articulated in the 1952, 1954, 1958 and 1970 handbooks. *See id.*

Significantly, when the Department issued in 1982 an internal policy memorandum interpreting the protection afforded under § 2024(d) as limited to no more than 90 days of training every three years, Congress reacted sharply. The House passed H.R. 6788, in an effort to clarify the issue. Although the Senate did not act on H.R. 6788, both houses addressed the issue in a subsequent report:

[The] Committees do not believe that the 90–day limit that the Labor Department has imposed on that period, based on the Solicitor of Labor's October 8, 1981, interpretation of § 2024 of Title 38, is *well founded, either as legislative interpretation or application of the pertinent case law.* Accordingly, the committees

urge the ASVE [Assistant Secretary of Labor for Veterans' Employment], ... to review the situation and take appropriate action to eliminate *this arbitrary limitation.*

1982 U.S.Code Cong. & Ad.News 3012, 3020 (emphasis added). At least two courts have found this statement of Congressional intent, issued *after Monroe* was decided, to be "persuasive" and have concluded thereby that no 90–day limit is to be read into § 2024(d). *See Barber,* 103 CCH Labor Cases at 24,863; *Anthony v. Basic American Foods, Inc.,* 600 F.Supp. 352, 355 (N.D.Cal.1984).[5]

In 1968 and again in 1974, Congress reviewed and acted upon VRRA, but left the language of § 2024(d) intact. When the Department of Labor sought to change a longstanding interpretation of the protections afforded under § 2024(d), Congress issued a strong statement of its intent with respect to the section. That statement is deserving of "special weight, because the inferences flow not from congressional action or inaction or amendatory legislation, but from *explicit congressional statements of the meaning of a phrase which was [left] unchanged during the period in question.*" *Walt Disney Productions v. United States,* 480 F.2d 66, 69 (9th Cir. 1973) (emphasis added), *cert. denied,* 415 U.S. 934, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974). Thus, the Court holds that the duration of military leave protected by § 2024(d) is not limited to 90 days.[6]

## C. *Reasonable Limits on the Duration of Military Leave*

■ Having determined that § 2024(d) is not limited to training periods of 90 days or less, the Court turns to the City's alternative argument. The City contends that, even if § 2024(d) is not limited to military leaves of 90 days or less, "there must necessarily be some limit on the duration of military training leaves." Reply Memorandum of City of New York at 3, 86 Civ. 7010 (JMC) (S.D.N.Y. July 22, 1987). The argument is twofold. First, the City suggests that the courts have consistently read a "reasonableness" standard into § 2024(d), thereby limiting the duration of military leaves. Second, because NYML § 242(3) establishes such a reasonable limitation by providing for six months of military leave, more generous than many other States, it conflicts neither with § 2024(d), nor with the objectives of Congress.

In support of its argument, the City relies upon several cases which have discussed the issue of reasonableness in the context of § 2024(d). The first of these is the Fifth Circuit's decision in *Lee v. City of Pensacola,* 634 F.2d 886 (5th Cir. Unit B 1981). In *Lee,* the employee, a city police officer, requested and received approval for a 59–day military leave with the National Guard. Toward the end of the 59–day period, the officer negotiated with the National Guard to have his leave extended by 4 months, without first consulting his employer. When the city refused to grant the additional leave, the officer remained with

---

**5.** The City argues that, despite the legislative statement in 1982, the Second Circuit in *New England Teamsters* "held" that § 2024(d) was limited to military leaves of 90 days' duration. Reply Memorandum of City of New York at 3, 86 Civ. 7010 (JMC) (S.D.N.Y. July 22, 1987). The Court has already addressed this argument above. In any event, the Congressional report criticizing the Department of Labor's new interpretation of § 2024(d) was neither cited nor discussed in *New England Teamsters.* This further supports the conclusion that the court was relying on the Supreme Court's *dicta* in *Monroe,* written prior to the Department's turnaround and Congress' admonishment.

**6.** In *Anthony v. Basic American Foods, Inc.,* 600 F.Supp. 352 (N.D.Cal.1984), the court rejected

an argument similar to that advanced here by the City. In *Anthony,* the defendant employer argued that, because the 1982 Congress did not change the existing law, its comments with respect to § 2024(d) were precatory and entitled to no weight. The court found this argument "misleading," writing that the situation did not involve "a case where existing law had to be rewritten in order for a Congressional statement to have significance. *What Congress did was to amplify the meaning of a statutory phrase that remained unchanged.*" *Id.* at 355 (emphasis added). The court went on to note the significance of the fact that the comments regarding § 2024(d) found in *Monroe* were *dicta,* and that Congress's statement was made after *Monroe* was handed down. *See id.*

the Guard. Subsequently, the city terminated his employment.

The *Lee* court itself acknowledged that its primary focus was on the conduct of the employee, *see* 634 F.2d at 889, not the duration of the military leave. Because the officer waited until he had actually received his military orders before informing his employer, the court concluded that his request for leave was unreasonable under the circumstances. *Id.* at 889–90. Indeed, *Lee* cuts against an argument that § 2024(d) contains any specific limitation on military leaves. Had the court in *Lee* believed that § 2024(d) embodied a 90–day limit on military training, "it would have ruled against plaintiff Lee on the simple ground that his [requested] tour of duty exceeded 90 days," and that his employer was not required to grant such a leave. *Barber*, 103 CCH Labor Cases at 24,862.

In those post-*Lee* cases cited by the City, the courts, when evaluating § 2024(d) under a reasonableness standard, focused on the circumstances surrounding the leave request, not the duration of the leave. *See Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467–68, 1469 (11th Cir.1987) ("[J]udicial inquiry into the reasonableness of *leave requests* must be limited and extremely deferential to the reservist's rights. The reservist begins with a presumption that her leave request is reasonable.") (emphasis added); *Bottger v. Doss Aeronautical Services, Inc.*, 609 F.Supp. 583, 585–86 (M.D.Ala.1985) (analyzing the "circumstances giving rise to the request [and concluding they] were reasonable and within the contemplation of the Act"); *Anthony v. Basic American Foods, Inc.*, 600 F.Supp. 352, 355–56 (N.D.Cal.1984) (leave request, presumed reasonable, evaluated in light of (1) "the circumstances giving rise to the request" and (2) "the requirements of the employer.").

In the instant case, there is no dispute with respect to the "reasonableness" of Cronin's requests for military leave.[7] Both his 1976 and 1985 requests for indefinite

military leave were approved by the Police Department. Indeed, the City does not really argue that Cronin acted improperly in any way. Thus, an evaluation, based on the above line of cases, of the reasonableness of the circumstances surrounding Cronin's leave is unnecessary. Instead, the real thrust of the City's argument is that NYML § 242(3) itself establishes a "reasonable" outside limit on the duration of protected military leaves, regardless of the circumstances surrounding the employee's request. The Court concludes that this argument is without merit.

Although the City contends that NYML § 242(3)'s six-month limit on military leaves does not conflict with the general language of § 2024(d), there is nothing in § 2024(d) to indicate that Congress intended to leave it to the States themselves to graft varying and arbitrary limits on the duration of protected military training leaves. The City may well be correct that New York's six-month provision is generous when compared to other states. But this does not change the fact that Cronin is deprived of pension credit to which he would have been entitled had he been employed, solely because his military training required more than six months to complete.

The City is in no position to challenge the fact that certain military training requires more than six months. It is the City's reliance upon NYML § 242(3), therefore, which denies Cronin equal treatment, strictly on the ground that New York has concluded that six months of military training protection satisfies the obligations of employers under § 2024(d). However, the City has simply failed to persuade the Court that it has the authority, whether derived from NYML § 242(3) or pursuant to § 2024(d) itself, to enact such limits.

Perhaps there is some "outer limit" beyond which employers, both private and public, should not be required to accommodate reservists. However, it is the responsibility of Congress, rather than the States

---

7. It is well established that § 2024(d)'s protections apply whether the training is required or not, *see Lee*, 634 F.2d at 889, *Bottger*, 609 F.Supp. at 586, and "regardless of whether [the

reservist] volunteers for active duty or is compelled to perform such duty," *id.* (quoting *Nieman v. Alpine Brook Triangle Corp.*, 69 CCH Labor Cases ¶ 12,940, at 24,994 (S.D.N.Y.1972)).

or the courts, "to draw the most appropriate balance between benefits to employee-reservists and costs to employers." *Monroe*, 452 U.S. at 565, 101 S.Ct. at 2519; *see Gulf States Paper Corp.*, 811 F.2d at 1468 ("Congress is in the best position to weigh[ ] the benefits to reservists against the burdens upon employers.").

■ The federal government's interest in the area of veterans' and reservists' rights "is pervasive and exhibits a clear intent to preempt conflicting state legislation." *Mazak v. Florida Dept. of Admin.*, 97 CCH Labor Cases ¶ 10,083, at 17,386 (N.D.Fla.1983) [Available on WESTLAW, 1983 WL 1995]. In the instant case, Cronin is denied pension credit for periods of military leave solely because his training required more than the six months provided for under NYML § 242(3). Accordingly, the two provisions are in conflict and the state regulation must give way. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963) ("The test of whether both federal and state regulations may operate, or state regulation give way, is whether both regulations can be enforced without impairing the federal superintendence of the field."); *Schell v. Ohio State Highway Patrol*, 91 CCH Labor Cases ¶ 12,866, at 18,042–043 (S.D.Ohio 1981) [Available on WESTLAW, 1981 WL 2289] (Ohio statute that distinguished between peace time volunteers and inductees in the granting of employment credit for periods of military service struck down as inconsistent with §§ 2024(d) and 2021(b)(3)).

An acceptance of the City's view would leave the States and the courts in a position to review the reasonableness of the military's needs in the area of personnel management and reservist training, and to balance such needs against employers' interests in minimizing the burdens placed upon them by being required to comply with § 2024(d). As stated above, this is a task for which the States and the courts are wholly unqualified. *See Gulf States Paper Corp.*, 811 F.2d at 1469. Just as an employee's leave request is presumed reasonable, *see, e.g., id.; Anthony*, 600 F.Supp. at 353–54, the type, duration and frequency of any particular course of military training must also be presumed reasonable.

### D. *Vesting of Cronin's Pension*

■ The final issue to be addressed concerns the vesting of Cronin's pension. Under § 13–256 of the Administrative Code of the City of New York, a police officer may retire after 15 years if the last five years of employment are continuous. The City argues that, because only the first six months of Cronin's 1985–1986 leave were protected under NYML § 242(3), Cronin will not have been working for 5 continuous years when he reaches his full retirement date in 1990. The City suggests that nothing in § 2024(d) provides for a waiver of its claim that Cronin was not continuously employed when his military leave extended beyond six months.

Once again, the Court finds the City's position to be without merit. Section 2024(d) expressly provides that following military training, an employee-reservist "shall be permitted to return to such employee's position with such seniority, status, pay and vacation *as such employee would have had if such employee had not been absent for such purposes.*" 38 U.S.C. § 2024(d) (emphasis added); *see Monroe*, 452 U.S. at 553 n. 7, 101 S.Ct. at 2513 n. 7 (Section 2024(d) "entitles a reservist who has been absent for inactive reserve training to benefits upon his return, such as wage rates and seniority, which automatically would have accrued if he had remained in the continuous service of his employer.").

Given the Court's earlier conclusion that a six month limitation may not properly be imposed upon § 2024(d), the City may not claim that Cronin has not been continuously employed for the last 5 years because his 1985–1986 military leave extended beyond six months. *See Alabama Power Co. v. Davis*, 431 U.S. 581, 594, 97 S.Ct. 2002, 2009, 52 L.Ed.2d 595 (1977) (pension benefits protected "when the break in [reservists'] employment resulted from their response to the country's military needs."); *Palmarozzo v. Coca-Cola Bottling Co. of New York, Inc.*, 490 F.2d 586, 591 (2d Cir. 1973) ("for purposes of calculating seniority rights, a man in the military is presumed

855

to be continuously employed...."), *cert. denied,* 417 U.S. 955, 94 S.Ct. 3083, 41 L.Ed.2d 673 (1974).

In light of the foregoing, plaintiff's motion for summary judgment is granted and defendants' cross-motion for summary judgment is denied. The City shall grant Cronin pension credit for the entire duration of his 1976–1977 and 1985–1986 military leaves, and shall consider Cronin to have been continuously employed with the Police Department during his 1985–1986 military leave. In addition, Cronin's initial appointment date is to be adjusted to October 25, 1968.

## CONCLUSION

Plaintiff's motion for summary judgment is granted. Defendants' cross-motion for summary judgment is denied. Fed.R.Civ.P. 56. Defendants are directed to proceed in conformity with this Memorandum and Order.

SO ORDERED.