David G. LEE, Plaintiff–Appellant,

v.

The CITY OF PENSACOLA, the Pensacola Police Department and the Civil Service Board for the City of Pensacola, Defendants–Appellees.

No. 79-3169.

United States Court of Appeals, Fifth Circuit. Unit B

Jan. 20, 1981.

---

Barry W. Beroset, Pensacola, Fla., for plaintiff–appellant.

Thomas C. Staples, Asst. City Atty., Pensacola, Fla., for defendants–appellees.

Before TUTTLE, GODBOLD and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

The appellant here complains of the dismissal by the trial court of his suit against the City of Pensacola, his employer, for failing to grant him a leave of absence "for the period required to perform active duty for training" as an officer of the Florida National Guard.

As a preliminary to outlining the facts, about which there is no significant issue, it is helpful to note that the parties both agree that the appellant is entitled to whatever protection 38 U.S.C. § 2024 provides for any reserve or National Guard officer or enlisted person, when such person seeks a leave from his city or county employment to take specialized training provided and paid for by the United States Military Forces.

This section, in relevant part states that such person:

[S]hall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training, . . . such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes. Such employee shall report for work at the beginning of the next regularly scheduled working period after expiration of the last calendar day necessary to travel from the place of training to the place of employment following such employee's release, or within a reasonable time thereafter if delayed return is due to factors beyond the employee's control.

38 U.S.C. § 2024(d).

The appellant was a police officer of the City of Pensacola. He also held a commission as captain in the Florida Army National Guard, commanding a unit of the Guard. Under existing Army regulations, he could continue as a captain for an additional period of six years without any further training beyond that encompassed in the annual weekly drills and summer camps. However, the Army did afford a number of courses for persons of his rank and service to qualify him for continuation in the Guard if not promoted or for promotion to the rank of Major as vacancies might occur. Having previously unsuccessfully applied for such specialized training, Captain Lee took advantage of a vacancy which the Plans and Training Officer of his headquarters told him was available, and applied to his superior, the chief of police, for military leave to attend the Transportation Officer Advance Course for the National Guard at Ft. Eustis, Virginia running, as he thought, from August 8, 1978 to September 27, 1978.

This leave was granted and he was ordered on this duty for training.[1]

Shortly after Captain Lee's arrival at Ft. Eustis, he learned that the course had actually begun a week earlier and also learned that the course he was then enrolled in was known as phase five of a total of six phases in the training program. He also learned that if he made application to his National Guard or Army superiors he might receive an extended order to stay for the completion of the remaining phases of the entire course by February 21, 1979. After checking with a military legal adviser as to his employment rights if he should continue in the course, and after obtaining assurance from the proper Army authorities that he could continue, he wrote a letter to the chief of police in Pensacola, which was received by the latter on September 21, 1978, a few days before the expiration of the original leave of absence. In the letter, he asked for a leave to continue through February 21.

The chief of police responded by saying that the department could not carry him in a leave status for such a period of time, and that he had until October 6 "to resign your position with the Pensacola Police Department or we will be forced to carry you absent without leave and ask for your termination." Lee responded and asked the chief to reconsider in light of the provisions of the Veterans Reemployment Rights statutes, but instead he was notified that he had been suspended with a recommendation for his dismissal. The Civil Service Board for the City of Pensacola then held a hearing on December 12 and dismissed Lee effective October 11, 1978.

Following his National Guard training in February 1979, Lee requested reinstatement to his position with the Pensacola Police Department. This request was denied. The trial court accepted the city's argument that the application of the statute to the state of facts here depended upon what the city called a "rule of reason;"

that is, that both the length of time of such a leave for training and the circumstances surrounding the request for it as well as the circumstances existing when the officer returned to seek reemployment, must all be reasonable under the circumstances. Although the court stated "the essential facts are not in dispute" the court later said:

There was conflicting testimony as to whether plaintiff knew or suspected when he requested the 59 day leave that the entire course might be much longer. However, it is clear that prior to remaining on the extended leave plaintiff did not discuss the various options open to him for completing the course with any of his superiors in the Department in an effort to work out a satisfactory solution. Instead, he voluntarily extended his training duty to suit his own convenience.

There is not involved here a situation in which plaintiff was denied the leave originally requested nor a situation in which plaintiff in time of war voluntarily resigned his position in order to be inducted into the armed services. On the other hand, it is also not a situation in which plaintiff voluntarily extended his military commitment for years after he could have been relieved of such obligation.

The court stated:

As cases cited by defendants point out, Congress, in amending the Act, intended to prevent discrimination in employment as a result of a reservist's military obligation but it did not intend thereby to endow a reservist with unreasonable powers over his employer or cause his employer unreasonable hardship. The training period for which leave of absence is given must be reasonable both in the context of the reservist's military obligation and the requirements of the employer. As pointed out in *Peel v. Florida Department of Transportation*, 443 F.Supp. 451 (N.D.Fla. 1977) at page 455, the congressional history indicates § 2024(d) was designed to

1. The record does not disclose whether this was "active duty for training" or "inactive duty for training." 38 U.S.C. § 2024(d).

accommodate trainees absent from employment for periods lasting 30, 60, or 90 days.

In short summary, defendants granted plaintiff the leave requested for the period required to complete one phase of a course consisting of several phases. There was no requirement that plaintiff complete all the phases at that time. In enacting § 2024(d) it could not have been the intent of Congress to permit employees who have been granted military leave to remain on such leave unnecessarily and at their own convenience to the detriment of the legitimate concerns of their employers. The court concludes defendants have not violated plaintiff's veteran's reemployment rights and plaintiff is entitled to no relief.

Lee contends that the statute is plain and without any limitations as to the length of time for which a leave for active duty training must be restricted. However, he agrees with the City that a rule of reason applies.[2] He claims that under the circumstances here his request for extended leave was entirely reasonable.

Both parties concede that there are no precedents by which we are bound in our interpretation of this section involving the reemployment rights. It has repeatedly been said that the acts of Congress providing for reemployment of military persons are to be construed liberally in favor of the veteran. *Smith v. Missouri Pacific Transportation Co.*, 313 F.2d 676 (8th Cir. 1963); citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946); *Rix v. Turnbull–Novak, Inc.*, 260 F.2d 785 (8th Cir. 1958); see *Boone v. Lightner*, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587 (1942).

Lee relies heavily on the case arising in the same district, *Peel v. Florida Dept. of Transportation*, 443 F.Supp. 451 (N.D.Fla. 1977), aff'd 600 F.2d 1070 (5th Cir. 1979), to support his argument that his training duty does not have to be "required" to qualify him to the benefits under § 2024(d). We agree that this section applies to training duty whether required or not. However, the *Peel* court did not deal with the question of reasonableness.

Here, the record discloses that for several weeks prior to his application for an extension of the leave for an additional four months, Lee was negotiating with his military superiors to ascertain whether they would extend his period of training beyond the original leave which he had requested and obtained. Yet he had no communication with the police department to indicate that he was seeking such extension of his training period. He waited until he received actual orders amending the original training orders before he communicated with the police department. He did not discuss with his civilian employer the fact that it was not necessary for him to complete the entire six phases of the course during this particular year, but that he could seek additional periods of training in subsequent years or that he could qualify for promotion by satisfactorily completing correspondence courses dealing with the subject matter of the Ft. Eustis school. Moreover, even after he had been notified by the chief of police that his leave would not be extended, he did not even then undertake to discuss with his employer the opportunities which were available to him, but simply stated that he intended to continue his absence from his civilian duties. He completely ignored the difficulties faced by the City in carrying out its important police duties.

**2.** On page 18 of his brief here, Lee says: "It is the Appellant's contention that a reasonable time must be considered under the circumstances and facts of his case and that his leave from August 8, 1978, until February 21, 1979, is reasonable under the circumstances of this case."

On page 21 of his brief, he says: "The Appellant, like any lay individual, who relies upon a statute, generally does not have access to the legislative history or the applicable case law. The test here is 'reasonableness' and under the circumstances of this case, the Appellant's requested extension for training was reasonable and his reemployment rights should be protected under 38 U.S.C. § 2021 et seq."

Under the circumstances of this case, it is clear that we cannot conclude that the trial court was clearly erroneous in its determination that Lee's conduct did not meet the rule of reasonableness that he acknowledges is binding in such a situation.

The judgment is AFFIRMED.