**David William LEMMON, Plaintiff,**

v.

**COUNTY OF SANTA CRUZ,
CALIFORNIA, Defendant.**

**No. C–86–20176–SW.**

United States District Court,
N.D. California,
San Jose Division.

May 12, 1988.

Judith A. Whetstine, Asst. U.S. Atty., San Francisco, Cal., William H. Berger, U.S. Dept. of Labor, Atlanta, Ga., of counsel, for plaintiff.

Dwight L. Herr, County Counsel, Jonathan Wittwer, Chief Asst. County Counsel, Santa Cruz, Cal., for defendant.

## BACKGROUND

SPENCER WILLIAMS, District Judge.

Santa Cruz County Sheriff's Department initially employed plaintiff David William Lemmon in an "other than temporary position" on November 9, 1967. He had previously been employed as a full-time temporary employee from July 1964 to October 1965. At the time of his permanent employment in 1967, plaintiff was a member of the United States Army Reserve (hereinafter the USAR), having previously served on active duty for training while a temporary employee. Plaintiff achieved the rank of lieutenant while employed with the Sheriff's Department.

On June 28, 1979, plaintiff applied with the USAR for active duty for training as part of the Military Technician Program.[1] The program required a three year tour of duty. Plaintiff was accepted and ordered

---

1. The Military Technicians Program was a three year test program intended to replace civilian technicians that were being used to support United States Army Reserve units and activities with Army Reserve personnel.

to begin duty on October 18, 1979 for three years, ending on October 17, 1982. By memorandum dated October 3, 1979, plaintiff requested military leave from the Sheriff's Office for a period of three years.[2] On October 9, 1979, in a memorandum titled "Acceptance of Resignation," Alfred F. Noren, Sheriff–Coroner, granted plaintiff military leave for three years effective October 16, 1979.[3]

Plaintiff began special active duty for training as scheduled. However, on August 14, 1980, ten months into his tour, plaintiff was informed by the Department of the Army that his USAR status of special active duty for training would be phased out no later than September 30, 1980.[4] In the memorandum, plaintiff was given the choice of converting to full-time active duty or terminating special active duty, thus removing him from the USAR Long Tour Management Program. Plain-

tiff converted to full-time active duty for the remainder of his three year tour.

On January 17, 1982, plaintiff was again contacted by the Department of the Army and informed that he could request a one year extension of his tour.[5] Plaintiff executed this request and was notified in late May or early June that the Department of the Army had approved the extension and his tour would end on October 17, 1983. By letter dated August 3, 1982, plaintiff informed the defendant that his tour had been extended and requested that his military leave be extended as well.[6]

Plaintiff served on active duty until October 17, 1983, at which time he was honorably discharged. By letter dated October 18, 1983, he applied for reemployment with the defendant, but was refused. Pursuant to the Veterans Reemployment Rights Act (hereinafter the VRRA) 38 U.S.C. Sec. 2021, plaintiff seeks reinstatement as a

---

2. The memorandum states: "I request military leave from the Sheriff's Office to go on active duty with the US Army for a period of three years. My last working day will be October 16, 1979.

"I am motivated by economic trends and a desire to further my education. Upon completion of this three year tour, I will contact the Sheriff's Office and the County of Santa Cruz regarding reemployment.

"I have greatly enjoyed my years of service with the Sheriff's Office and the people that I have worked for and with."

3. In response to plaintiff's request for military leave, Alfred F. Noren, Sheriff–Coroner wrote in a memorandum titled "Acceptance of Resignation:" "This memo will serve as acceptance of your departure from the Sheriff's Office on military leave for three years effective October 16, 1979.

"I wish to thank you for your twelve years of service to the Santa Cruz county Sheriff–Coroner's Office and to wish you well in your military endeavor."

4. The Department of the Army memorandum was addressed to each Special Active Duty for Training Officer Long Tour Participant, informing them that all Army Reserve participants were required to convert from Special Active Duty for Training to full-time active duty. Language under the section titled "Decline Active Duty" reads as follows:

I hereby decline to accept conversion of my Special Active Duty for Training tour to full-time active duty (AGR). I understand it is the intent of the DOD Authorization Act of 1980 that all USAR participants be converted to

Active Guard/Reserve (AGR) status no later than 30 September 1980. This designation will cause my name to be submitted to the Secretary of the Army for approval to *terminate* my Special Active Duty for Training tour effective 30 September 1980 in accordance with 10 U.S.C. § 681(a) and I will be *removed* from the USAR Long Tour Management Program (LTMP) (emphasis added).

5. The Department of the Army memorandum stated:

1. Your present end of tour date is 17 October 1982. You have two (2) options under normal long tour management policy:

a. You may request extension of your current tour for one (1) year. If you request extension, concurrence by your major command (MUSARC) must accompany the request.

b. You may request that your current tour and AGR status be terminated as of your end of tour date.

6. "I am a county employee currently on military leave from the Sheriff–Coroner's Department. I applied for and was granted military leave for a period of three years. My present tour would have ended on October 17, 1982.

"I recently received a copy of an amendment to my orders that continue my present tour for another year. I request that my present military leave be extended for another year to October 17, 1983. When I first checked with the personnel department about military leave, I was told that military leave could run up to five years."

lieutenant, a rate of pay and seniority reflecting the level he would have achieved had he been reinstated in October 1983, plus back wages and other lost benefits. This matter comes before the court on plaintiff's motion for summary judgment.

## DISCUSSION

Essentially, plaintiff claims he was granted military leave for three years in October 1979, and that as a volunteer for special active duty for training his reemployment rights were protected under 38 U.S.C. Sec. 2024(d). Plaintiff also claims that in August 1980, when the Department of the Army informed him that special active duty for training, would be phased out, it effectively *ordered* him to convert his military status to full-time active duty. Thus, plaintiff argues, his reemployment rights flow from 38 U.S.C. Sec. 2024(b)(1) instead of Sec. 2024(d). Additionally, plaintiff suggests that his one year extension is covered by Sec. 2024(b)(1) because he remained on full-time active duty during that period. Finally, because the protections provided under the VRRA protect only those who serve in the military for four years or less, plaintiff argues that his initial tour plus the one year extension fall within that limitation.

Under 38 U.S.C. Sec. 2021, a person who leaves a position of employment (other than temporary) to serve in the armed forces, receives an honorable discharge and applies for reemployment within ninety days of discharge, is entitled to reinstatement in the same position or a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so. Although this section applies to inductees, 38 U.S.C. Sec. 2024 extends these rights to persons who enlist or are called to active duty, or reservists. Section 2024(d) provides in pertinent part:

Any employee not covered by subsection (c)[7] of this section who holds a position described in clause (A) or (B) of section 2021(a) shall upon request be granted a leave of absence by such person's employer for the period required to perform *active duty for training or inactive duty for training in the Armed Forces* of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training, or upon such employee's discharge from hospitalization incident to that training, such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purpose ... (emphasisi added).

Section 2024(b)(1) provides in pertinent part:

Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enters upon active duty (other than for the purpose of determining physical fitness and other than for training), whether or not voluntarily, in the Armed Forces or the United States ... in response to an order or call to active duty shall, upon such person's relief from active duty under honorable conditions, be entitled to all of the reemployment rights and benefits provided for by this chapter in the case of persons inducted under the provisions of the Military Selective Service Act (or prior or subsequent legislation providing for the Armed Forces), if the total of such active duty performed ... after August 1, 1961 does not exceed four years (plus in each case any additional period in which such person was unable to obtain orders relieving such person from active duty).

Defendant contends that plaintiff was never covered by the VRRA because plaintiff resigned his position as consideration for a three year military leave. Defendant concedes that plaintiff had a right to reemployment, but argues that it was a contractual right, not a statutory right, and that plaintiff forfeited this right under the contract by choosing to convert to full-time active duty instead of returning to work.

**7.** Section 2024(c) provides reemployment rights to Reservists who are entering for an initial period of active duty for training of not less than three consecutive months.

The court disagrees and finds that plaintiff did not relinquish his rights under the VRRA when he left defendant's employment.

The court begins its analysis by recognizing that provisions of the Veterans Reemployment Rights Act must be liberally construed in favor of granting rights to the veteran who leaves private employment to serve his country. *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980). On October 3, 1979, plaintiff informed the defendant that he had been accepted into military service and required a three year leave of absence. Plaintiff's request for military leave clearly stated the purpose and duration of his request. Mr. Noren should not have been confused as to the nature of the request. Nevertheless, he argues that it was his understanding that plaintiff was resigning his position as consideration for being re-hired after three years. In support of this contention, defendant points to the memorandum dated October 9, 1979, titled "Acceptance of Resignation." The title, however, conflicts with the text of the memorandum which reads "[t]his memo will serve as acceptance of your departure from the Sheriff's Office on military leave for three years effective October 16, 1979." Thus, based on the plain meaning of the rewritten instruments, the court finds that defendant knew, or should have known, that it was granting plaintiff a three year military leave of absence.

Moreover, assuming arguendo that plaintiff did resign, his resignation from civilian employment to enter military service should not affect his rights under the VRRA. The general rule is that "a resignation from civilian employment to enter military service does not deprive a veteran of employment rights." *Hilliard v. New Jersey Army National Guard*, 527 F.Supp. 405 (D.N.J.1981); *Accord, Green v. Oktibbeha County Hospital*, 526 F.Supp. 49, 54–55 (N.D.Miss.1981); *Davis v. Halifax*

*County School System*, 508 F.Supp. 966, 969 (E.D.N.C.1981); *Micalone v. Long Island Railroad Co.*, 582 F.Supp. 973, 978 (S.D.N.Y.1983). Therefore, plaintiff's reemployment rights turn on the applicability of the VRRA and are not the result of a contractual agreement entered into by the parties.

Second, defendant contends that, even if plaintiff was covered under the VRRA, a three year leave of absence is too long and, therefore, unreasonable. Defendant's initial premise is that 38 U.S.C. Sec. 2024(d) was never intended to cover leaves of absence for extended periods of time. *See Peel v. Florida Dep't of Transportation*, 443 F.Supp. 451 (N.D.Fla.1977), *aff'd*, 600 F.2d 1070 (5th Cir.1979) (defendant argued section 2024(d) was designed to accommodate trainees who were absent for 30, 60, or 90 days). Instead, defendant argues, an employer is required to grant an employee's request for military leave of absence only if it is reasonable as determined by the test outlined in *Lee v. City of Pensacola*, 634 F.2d 886 (5th Cir.1981).[8] Although the rule in *Lee* had not been articulated at the time plaintiff made his request for military leave, other courts have adopted the *Lee* reasonableness standards as the current test. This court also adopts the *Lee* rule.

In *Lee*, plaintiff had sought and received a leave of absence to attend a National Guard training program, which he believed would last fifty-nine days. Shortly after he arrived for training, he discovered the course had begun a week earlier and that there were five other phases to the program. In order to complete the program, he would have to stay for an additional five months. Instead of immediately notifying his employer of the situation and requesting an extension of his military leave, Lee waited until a few days before his first leave was to expire and then requested an extension of his leave. The employer refused and dismissed him. After complet-

---

**8.** The defendant in *Lee* argued that the legislative history of Sec. 2024 indicated that it was designed to accommodate trainees who were absent for 30, 60, or 90 days. This reading of the legislative history of Sec. 2024(d) was clearly rejected in *Anthony v. Basic American Foods, Inc.*, 600 F.Supp. 352 (N.D.Cal.1984).

ing the training, Lee sought reinstatement which the employer denied.

Although Sec. 2024(d) does not contain explicit language requiring that an employee's request for leave of absence be "reasonable," the Fifth Circuit noted that the VRRA was not intended "to endow a reservist with unreasonable powers over his employer or cause his employer unreasonable hardship. The training period for which leave of absence is given must be reasonable both in the context of the reservist's military obligation and the requirements of the employer." *Id.* at 888.

Since *Lee,* several courts have articulated their version of the reasonableness test: "The courts should evaluate the request both in light of the circumstances giving rise to the request and the requirements of the employer. However, in making this analysis the employee enjoys a presumption that the leave is reasonable." *Anthony v. Basic American Foods, Inc.,* 600 F.Supp. 352 (N.D.Cal.1984). "The test is totality-of-the-circumstances surrounding the leave of absence." *Bottger v. Doss Aeronautical Services, Inc.,* 609 F.Supp. 583 (M.D.Ala.1985). "The courts should focus on the employee's conduct. If the employee withholds information pertaining to assignment or engages in conduct akin to bad faith as a means of obtaining military leave, the request is unreasonable." *Gulf States Paper Corp. v. Ingram,* 811 F.2d 1464 (11th Cir.1987).

■ The court agrees with the Eleventh Circuit's reading of *Lee,* but with a slight modification. First, when considering the circumstances giving rise to the request, the focus should be placed on plaintiff's conduct. If plaintiff engaged in conduct that rises to the level of bad faith, the request for military leave may be unreasonable. Second, the burden on the employer to fill a vacant position is relevant in determining reasonableness. Of course, each employer's needs are different. Moreover, in the mind of the employer, replacing any employee even temporarily may be a great burden. Such a subjective belief, however, standing alone is insufficient to make the request unreasonable.

Thus, in order to successfully prove that a request for military leave is unreasonable, the employer must overcome a presumption of reasonableness in favor of the employee. Factors such as the size of work force the employee is temporarily leaving, the size of the labor pool from which a replacement may be recruited, the unique nature of the employee's skills and the difficulty in finding someone similarly qualified are only some of the matters that must be weighed in determining the reasonableness of the employee's requested absence.

■ In this case, plaintiff followed proper procedures for a request of military leave of absence. He applied for a position in the Military Technicians Program, and after his acceptance he formally requested permission for leave of absence from his duties as a sheriff. Nothing in the facts suggests that plaintiff acted improperly when he requested military leave. Indeed, in *Anthony,* the plaintiff never sought permission from his employer nor discussed how his position would be filled during his absence. Yet, the court did not find that the plaintiff's conduct was unreasonable. *Anthony,* 600 F.Supp. at 356. Finally, while recognizing plaintiff's leave of absence may have inconvenienced defendant, the court does not believe it constituted an unreasonable hardship. The facts indicate that defendant was able to fill plaintiff's position in one day by simply reassigning other personnel within the department.

The court realizes that in some circumstances three years military leave may be too burdensome on the employer. However, three years is not, per se, unreasonable. Indeed, in a very recent case an employee was granted two consecutive leaves of absence to serve 12 to 18 months for flight engineer training. Eventually, the plaintiff served a total of two years. *Cronin v. City of New York,* 675 F.Supp. 847 (S.D.N.Y.1987). It is also important to note that defendant granted plaintiff's request. If three years was unreasonable, defendant could have denied the request or limited it to a shorter time period. To grant plaintiff's leave of absence and then during litigation claim it was unreasonable

is curious, to say the least. Defendant cannot have it both ways. Without more egregious conduct on the part of the plaintiff, or a more pronounced burden on defendant, the court finds defendant has failed to overcome the presumption of reasonableness.

Next, defendant contends that plaintiff is not entitled to reinstatement because his reemployment rights under Sec. 2024(d) of the VRRA lapsed when he chose to convert from special active duty for training to active duty status. Case law on this point is sparse. Defendant cites only one case on the matter. *Smith v. Missouri Pacific Transportation Co.*, 313 F.2d 676 (8th Cir.1963). In *Smith*, plaintiff was denied reinstatement to his former position after he voluntarily extended his military activity for a number of years beyond the time he would have been entitled to discharge. Smith left defendant's employment in July, 1942 and remained in military service for 10 years and 8 months. Given his age, the plaintiff would have been discharged in 1948. Instead, he chose to extend his term to June, 1951. In addition, prior to this extension, Smith had twice before requested extensions of duty and had been accepted.

The plaintiff claimed he was covered under either Sec. 9(g)(1) and (2) of the Universal Military Training and Service Act, first adopted in 1948, 62 Stat. 604, 614, 50 U.S.C. App. Sec. 459(g)(1) and (2) [9], or Sec. 8 of the earlier Selective Training and Service Act of 1940, 54 Stat. 885, 890. *Id.* at 677–678. He argued that in 1948, after he had served six years on active duty, he received a Department of the Army circular offering new commitments for extended tours of service on active duty, and that upon volunteering for such extension he was "reentering" into the military service again.

Thus, Smith argued, he was covered by Sec. 459(g)(2) [10] of the 1948 Act.

The court found that Smith was not covered by either of the sections of the VRRA. In considering Smith's "reentry" argument, the court found that he had served continuously in the armed services from 1942 to his discharge in 1953 and had advanced in rank from captain to colonel during his term. The court also found that, if it were not for his age, he would have served in the armed services indefinitely; he was a man who enjoyed the military life and intended to stay on active duty as long as possible and his plans to return to work were entirely contingent upon his ability to stay in the armed forces. *Id.* at 679. Thus, it was not possible for him to reenter the service because he never left.

The *Smith* case is inapposite and, therefore, unpersuasive as to the present case. Here, plaintiff did not enter into active duty with the clear purpose of making the military service his chosen career and then try to invoke rights under VRRA only after his first choice had run its course. Plaintiff originally volunteered for special active duty for training. Only after that status was terminated by the Department of the Army and he was faced with termination of his commission did he convert to active duty status.

Additionally, plaintiff's period of absence on military duty was within the four year maximum allowable while Smith's absence was far in excess thereof.

Thus, the court finds that plaintiff remained covered under the VRRA after his conversion from active duty for training to active duty. The August 14, 1980 memorandum from the Department of the Army, in effect, forced plaintiff to choose between changing his status or losing the benefits for which he joined the program. Under

---

**9.** Section 2024(d) is a recodification of Sec. 459(g) of 50 U.S.C.App. which granted reemployment rights and benefits to Reserve and National Guard members who entered or were called to active duty or inactive duty training. S.Rep. No. 93–907, 93rd Cong., 2d Sess. 112–113 (1974).

**10.** Actually, the plaintiff made three arguments as to why he was covered: that he was covered under Sec. 459(g)(1) of the 1948 Act because he had "enlisted" in the armed forces; that he was covered under Sec. 459(g)(2) of the 1948 Act as a person who "enters" into the armed forces; and that by reentering, the four year limitation did not apply. The court rejected all of these arguments. *Id.* at 679.

these circumstances, the Department's August 1980 memorandum is analagous to an order to change status. To find otherwise would jeopardize the benefits of future reservists who during their tours of military service are forced, through no fault of their own, to convert from one status to another.[11]

■ In the alternative, defendant contends that if the plaintiff is covered by the VRRA, he served beyond the four year maximum set forth in Sec. 2024(b)(1). Defendant bases this novel theory on plaintiff's earlier leave for Reserve Service between December 1, 1967 and October 17, 1979. Defendant contends that when this prior reserve duty is added to plaintiff's approved three year leave of absence which commenced on October 18, 1979, only 126 days remained before plaintiff reached the four year maximum. Therefore, defendant argues, plaintiff lost his reemployment rights because he violated the four year limitation in Sec. 2024(b)(1) when he extended his tour for another year.

However, Sec. 2024(d) and 2024(b)(1) differ. While Sec. 2024(b)(1) contains a four year limitation, Sec. 2024(d) does not. As stated earlier, Sec. 2024(d) is instead limited by a reasonableness standard. The plaintiff's initial involvement with the USAR after becoming a permanent employee was between 1967 and 1979. During that period the plaintiff served 230 days and was covered by Sec. 2024(d). In 1979, the period in question, plaintiff again volunteered for active duty training as part of a special training program. He requested and was granted three years military leave of absence. At this time, the plaintiff was again covered by Sec. 2024(d). However, after ten months, when plaintiff was ordered to change his status to active duty, his reinstatement protection shifted to Sec. 2024(b)(1). It was at that point that plaintiff's time began to run on the four year maximum contained in Sec. 2024(b)(1). Accordingly, plaintiff's subsequent service for the remaining two years of his initial leave plus the one year extension was well within the four year maximum.

■ Having determined that Sec. 2024(b)(1) is applicable, the court must examine plaintiff's one year extension under this section. On January 17, 1982, plaintiff received a Department of the Army memorandum confirming his end of tour date and informing him that two options were available under Long Tour Management policy: Plaintiff could request extension of his current tour for one year, or he could request that his current tour and reserve status be terminated as of the end of the tour date. Under Sec. 2024(b)(1), a reservist entering upon active duty in the armed services is afforded great flexibility. The employee's right to reemployment benefits are protected while serving, yet the employee is not even required to provide notice to his employer that he is leaving to enter military service. *Adams v. Mobile County Personnel Board*, 95 Lab.Cas. (CCH) Para. 13,886 (S.D.Ala.1982) [available on WESTLAW, 1982 WL 1972]. (As to the necessity of prior notice, none is required....), *Fortenberry v. Owen Brothers Packing Co.*, 267 F.Supp. 605 (S.D. Miss.1966), *aff'd*, 378 F.2d 373 (5th Cir. 1967). In essence, Sec. 2024(b)(1) is self-executing, providing protection to those who meet its qualifications without regard to circumstances.

Hence, reemployment rights under 2024(b)(1) unlike rights under Sec. 2024(d), are not weighed against the needs of the employer because Sec. 2024(b)(1) is not subject to a reasonableness standard. Instead, Congress placed protections for the employer directly in the language of Sec. 2024(b)(1): "a reservist's active duty may not exceed four years active duty." In the instant case, the plaintiff served approximately thirty-five months of active duty, well within the limitation period set forth in

---

11. The court does not find that military service under Sec. 2024(d) and 2024(b)(1) may run consecutively thus allowing a person to enter under one section of the VRRA, serve his or her term, and then reenlist under a different section in order to prolong their reemployment benefits indefinitely. The court finds only that under the facts and circumstances of this case, the plaintiff was covered during his four year tour of duty by Sec. 2024(d) while serving on Special Active Duty for Training, and Sec. 2024(b)(1) while serving on Active Duty.

Sec. 2024(b)(1). Since the coverage of Sec. 2024(b)(1) is self-executing, extending his tour of duty was legally within his power as long as he did not serve more than four years.

Finally, defendant argues that plaintiff has failed to state sufficient facts to overcome defendant's affirmative defense of laches.[12] Defendant contends that plaintiff's claim under the VRRA is barred by laches because plaintiff delayed filing suit for an unreasonable period of time. Defendant contends that a total of six years has passed from the time the County required plaintiff's termination as part of his military leave. Of those six years, three and one-half years constitute the period from the County's denial of the plaintiff's request for an extension of his leave, and two and one-half years constitute the period from the date the County mailed its letter denying reemployment to filing this lawsuit. Since the court has previously addressed the issue of plaintiff's extended leave, the only time period at issue is the two and one-half years between the County's letter and plaintiff's lawsuit.

In the instant case, the two and one-half year delay was the result of the time it took to process the plaintiff's request for referral to the United States Department of Justice, the ensuing investigation by the United States Department of Labor, plus an unexplained delay of one year and six months from the time plaintiff last communicated with the County to the time of commencing the litigation.

 In order to establish a defense of laches, the County must show (1) a lack of diligence by the party against whom the defense is asserted and (2) prejudice to the defending party. *Lingenfelter v. Keystone Consolidated Industries, Inc.,* 691 F.2d 339 (7th Cir.1982). Under this two prong test, it is plaintiff who bears the burden of explaining any delay for bringing the suit. If the explanation is insufficient, defendant must then show prejudice. However, an unreasonable, inexcusable delay raises a presumption that defendant suffered damages and prejudice. *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1011–15 (7th Cir.1970), *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971). *See also E.E.O.C. v. Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 81 (3rd Cir.1984), *cert. dismissed,* 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984).

 The court finds that plaintiff's delay was not unreasonable and inexcusable. Thus, plaintiff's claim is not barred by laches. In *Farries v. Stanadyne/Chicago Div.,* 618 F.Supp. 1324 (D.C.Ind.1985), *aff'd,* 832 F.2d 374 (7th Cir.1987), the court granted the defendant's motion to dismiss[13] after the plaintiff failed to adequately explain why he waited four years before contacting the Department of Labor. Moreover, after the plaintiff contacted the Department, their investigation took an additional two years to complete, resulting in further prejudice to the defendant. In the eyes of the court, the plaintiff had delayed for six years without a reasonable excuse. In the present case, plaintiff delayed filing suit for two years and six months. Of that time, one year was consumed by the government's investigation, leaving a one year and six month delay. This year and a half delay is hardly unreasonable in light of plaintiff's six year delay in *Farries.* More recently, in *Lang v. Great Falls School District,* 842 F.2d 1046 (9th Cir.1988), the Ninth Circuit affirmed the district court's determination that a veteran's claim against a school district for denying him advancements in his salary schedule while on military leave was not barred by laches even after an eight year delay. The district court found that the

---

12. The VRRA provides: "No state statute of limitation shall apply to any proceeding under [the Act]." 38 U.S.C. Sec. 2022. The legislative history under the VRRA expressed the Congressional intent that proceedings to enforce veterans' rights be governed by principles of equity. Congress determined that enforcement would be available more uniformly by making laches the applicable time-bar defense rather than individual state statutes of limitations. S.Rep. No. 93–907, 93 Cong., 2d Sess. 111–12.

13. In *Farries,* the court treated defendant's motion to dismiss as a motion for summary judgment. *Id.* at 1325.

school district had not shown that it suffered sufficient prejudice as a result of the plaintiff's inexcusable neglect. On review, the circuit court could find no abuse of discretion on the part of the district court.

Finally, this court finds that defendant's claims of unclean hands, estoppel and waiver are also insufficient as affirmative defenses. As movant for summary judgment, plaintiff must show the inadequacy of each of the defendant's affirmative defenses. Nevertheless, the defendant must first plead sufficient facts to establish those defenses. "A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists." *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). This defendant has done nothing more than make bold cursory assertions regarding these claims.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is hereby granted.

IT IS SO ORDERED.