ST. VINCENT'S HOSPITAL, a corporation, Plaintiff–Appellee,

v.

William "Sky" KING, Defendant–Appellant.

No. 89–7392.

United States Court of Appeals, Eleventh Circuit.

May 22, 1990.

Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, Asst. U.S. Atty., Birmingham, Ala., John F. Cordes, U.S. Dept. of Justice, Civil Division, Jay S. Bybee, Michael Jay Singer, Mark B. Stern, U.S. Dept. of Justice, Washington, D.C., William H. Berger, U.S. Dept. of Labor, Office of the Solicitor, Atlanta, Ga., for defendant-appellant.

Harry L. Hopkins, Lange, Simpson, Robinson & Somerville, Morris Wade Richardson, Birmingham, Ala., for plaintiff-appellee.

Before TUTTLE *, RONEY *, and HILL *, Senior Circuit Judges.

TUTTLE, Senior Circuit Judge:

This appeal arises from a declaratory judgment action brought by St. Vincent's Hospital (St. Vincent's) to determine its obligations under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021 *et seq.*, commonly known as the Veterans' Reemployment Rights Act. St. Vincent's had denied a three year leave of absence requested by its employee King, a sergeant major in the Alabama National Guard, because King contended that he was entitled to reemployment rights following the termination of a three year tour of duty with the Alabama National Guard. St. Vincent's filed this declaratory judgment action seeking to have the court declare it not to be liable for King's reemployment under the Act.

The trial court found that King's request for a three year leave of absence was "unreasonable" and entered judgment in favor of St. Vincent's.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

## I. STATEMENT OF FACTS

The parties stipulated to the facts which were then considered by the trial court, together with depositions on file. We find that the trial court properly summarized the agreed upon facts as follows:

King was employed by the Hospital on September 24, 1979 as manager of its security department. (The department was subsequently renamed Protective Services in 1987.) King supervised twenty-one employees in his department including three full-time supervisors. He advised the Hospital on many matters pertaining to the safety and welfare of its employees and patients.

King characterized his position with the Hospital as a fairly high profile public relations position. The job involved constant contact with patients, employees, and the general public. He also had to deal with the Hospital's professional staff of doctors on a daily basis.

King has been a reserve member of the Alabama National Guard for thirty-five years. During his employment with St. Vincent's King served on numerous tours of training, some of which were military leaves of absence from St. Vincent's and some of which were taken on his own vacation time, personal days off, or weekends when he was not scheduled to work.

While on an annual two week National Guard leave in June, 1987, King submitted an application for the position of State Command Sergeant Major for the Alabama National Guard. The Command Sergeant Major is an advisor to the Adjutant General on all matters concerning the performance, training, appearance and conduct of enlisted personnel. King knew this was a full time position with the Alabama National Guard and that it required a three-year commitment.

Upon his return to work in late June, King did not inform anyone at the Hospital that he had applied for the Command Sergeant Major position.

King checked on his reemployment rights by telephoning James A. Bishop, a reemployment compliance specialist with the Veterans Reemployment Rights office in Atlanta, Georgia. Bishop advised King that he could serve up to four years on "active duty" and have reemployment rights under the Veterans' Reemployment Rights Act. King recalled that he sought advice from Bishop prior to receiving notice of his selection for the position on July 18, 1987.

On Saturday, July 18, 1987, King was informed by Major General Ivan F. Smith that he had been selected for the position of Command Sergeant Major for the Alabama National Guard. King was told by General Smith that he would be called on July 10, 1987 with the particulars, but in fact King was not given his August 17, 1987 report date until August 7, 1987. King accepted the appointment, however, on July 18, 1987.

King informed Larry Presto, Vice President of General Clinical Services (and King's immediate supervisor), that he would be taking a position with the Alabama National Guard for a three-year period. King recalled that his conversation took place during the week of July 20 and Presto recalled this conversation's occurring around the first of August, but not in July. At this time, King did not know when he would assume his duties as State Command Sergeant Major and indeed did not discover until August 7 that his military service would begin on August 17.

King was very excited about becoming State Command Sergeant Major with the Alabama National Guard. He believed it to be a great honor even to be considered for such position and thought of it as a great personal honor to anyone. King did not receive a rank promotion, and his principal duties consist[ed] of advising the adjutant general. King accepted the position of Command Sergeant Major because he believed it was an honor to be selected as the number one enlisted person in the Alabama National Guard. He also believed that even though the position did not entail a promotion in rank, it would enable him to contribute his experience to the National Guard and help

fulfill his perceived duty and obligation to his State and Nation.

At the time King first informed Presto of his selection as Command Sergeant Major, Presto had King go to the Hospital's publicity department, which resulted in an article's appearing in the Hospital's October 1987, monthly news magazine. Presto stated that he would do whatever Hospital policy and the law required with regard to King's leave request.

King's last day of work with St. Vincent's was August 14, 1987, and he began his three year tour as Command Sergeant Major on August 17, 1987, on which date he received his orders.

On September 1, 1987, King returned to St. Vincent's to help with the transition of his chairmanship of the Hospital's United Way Committee to his successor.

King's work as Manager of Security and then Protective Services was characterized by Presto as exemplary; Betty Williams, the Hospital's Vice–President for Human Resources, called him a very good employee with very good performance evaluations.

On September 8, 1987, after considering King's leave request and receiving advice of counsel, St. Vincent's notified King by letter from Executive Vice–President Vincent Donlon of its decision to deny his leave request. In denying King's request, St. Vincent's stated its belief that King's request did not qualify under the provisions of the Veteran's Reemployment Rights Act and that King's request for such a lengthy period of time was unreasonable.

The provision of the Veterans' Reemployment Rights Act governing King's right to request and receive a leave of absence from his employer is codified at 38 U.S.C. § 2024(d) which states in pertinent part as follows:

[The] employee ... shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inac-

tive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training, ... such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes.

38 U.S.C. § 2024(d).

## II. ISSUES

1. Is Section 2024(d) subject to a "reasonableness" test in its application?

2. Did the trial court err in finding that King's application for leave was *per se* "unreasonable" or, if not, should the judgment be affirmed because it was "unreasonable" under the circumstances of this case?

## III. DISCUSSION

This Court and its predecessor, the Court of Appeals for the Fifth Circuit, have played a prominent part in the construction of Section 2024(d), *Gulf States Paper Corp. v. Ingram,* 811 F.2d 1464 (11th Cir. 1987); *Lee v. City of Pensacola,* 634 F.2d 886 (5th Cir.1981).[1] Although the *Lee* decision is binding precedent for this Court, in *Gulf States,* we stated: "[W]e are further articulating the legal reasonableness standard." 811 F.2d at 1468 (1987). Thus, we look to *Gulf States* for our guidance.

### A. *"Per Se Unreasonable"*

■ As authorized under the Act, King was represented by the United States Department of Justice. Unlike the unsuccessful employee in *Lee* and the successful employee in *Gulf States,* the United States takes the position in this case, that "the plain language of 38 U.S.C. § 2024(d) does not place any limitations on the duration of a leave of absence protected by the Act." App.Br. p. 17. This Court in *Gulf States*

---

**1.** In *Bonner v. City of Prichard,* (en banc), 661 F.2d 1206 (11th Cir.1981), this Court adopted as binding precedent all of the decisions of the

former Fifth Circuit decided prior to October 1, 1981.

rejected this argument if it was made.[2] This Court stated:

> Although the statute does not address the "reasonableness" of a reservist's leave request, the Fifth Circuit added a "reasonableness" gloss to Section 2024(d)'s requirements. *Lee*, 634 F.2d at 889. Thus, under *Lee*, a reservist's request must be reasonable to qualify for the protections of the Veterans' Reemployment Rights Act.

*Gulf States*, 811 F.2d at 1468. We thereafter stated:

> Eliminating the impermissible factors from the inquiry [as applied by the trial court in that case], all that remains are *the length of the leave, Ingram's actions, and burden upon Gulf States* in filling her position during her absence. For an employer to succeed in proving a request unreasonable, it must overcome the presumption of reasonableness. [*Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981)]. Following *Lee*, the weightiest factor in overcoming that presumption is the conduct of the employee.

*Gulf States*, 811 F.2d at 1469 (emphasis added). That factor, of course, requires us to consider the good faith of the employee. In *Gulf States*, we stated: "Bad faith conduct might also be shown through requests for leaves of exceptional duration." 811 F.2d at 1470 n. 4. In considering the issue involved in the length of the leave, we stated: "We agree that although one year is not *per se* unreasonable, a greater length of time might reach that level." *Id.* at 1469.

The government contends that these statements by us in *Gulf States* are *dicta*. Nevertheless, we consider them as providing guidance in deciding the present case. The statements were used in our attempt carefully to describe the elements that a court must consider in determining whether a request for leave is reasonable.

Significantly, the Court of Appeals for the Third Circuit in its decision in *Eidukonis v. Southeastern Pennsylvania Transportation Authority*, 873 F.2d 688 (3rd Cir.1989), adopted as the law of the Third Circuit our decisions in *Gulf States* and *Lee*. Although there was a dissenting opinion in *Eidukonis*, the dissenting judge agreed that the statute should be construed under a standard of reasonableness. The dissent pointed out that:

> it has long been a maxim of statutory construction that " '[g]eneral terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language, which would avoid results of this character.' " *Government of Virgin Islands v. Berry*, 604 F.2d 221, 225 (3rd Cir.1979) (quoting *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 486–87, 19 L.Ed. 278 (1868)). Were we to read Section 2024(d) as creating an absolute right of reinstatement, reservists would be allowed to play fast and loose with the system in a way that Congress could not have intended.

*Eidukonis*, 873 F.2d at 699. The Court of Appeals for the Fifth Circuit has articulated this standard of construing a federal statute most aptly in *United States v. Mendoza*, 565 F.2d 1285 (5th Cir.1978). In that case, the Court of Appeals for the Fifth Circuit stated:

> In the celebrated *Holy Trinity Church* case, *Rector of Holy Trinity Church v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), the Supreme Court held that if a literal construction of the words of a statute would lead to an absurd, unjust or unintended result, the statute must be construed so as to avoid that result.

565 F.2d at 1288.

We are, of course, bound by the previous decisions of this Court applying the "rea-

---

**2.** It should be noted that the employee plaintiff in *Lee,* who was not represented by the United States, agreed that a "reasonable" standard should apply to the interpretation of the Act. Nevertheless, this Court in *Gulf States* accepted

that standard as binding on this Court. The opinion does not indicate that the United States took its current position that the language of Section 2024(d) could not be interpreted as requiring a showing of "reasonableness."

sonableness" test. However, we note that even were we not so bound, we would independently arrive at the same result. Moreover, as the Court in *Eidukonis* said:

> The Supreme Court has also signified such an interpretation of the legislative history since it stated that the provision 'now codified at 38 U.S.C. 2024(d), was enacted in 1960 to deal with problems faced by employees who had military training obligations lasting less than three months.' *Monroe*, 452 U.S. at 555 [101 S.Ct. at 2514].

*Eidukonis*, 873 F.2d at 693.

■ As noted above, the trial court found that the three year leave of absence in this case would be *per se* unreasonable. It, therefore, becomes incumbent on us to determine whether such an interpretation of the statute is necessary to prevent an absurd, unjust, or unintended result. We conclude that it is.

The trial court, after carefully considering the three factors which we stated in *Gulf States* were applicable to a reasonableness determination, stated:

> The court ... cannot say that King's conduct (apart from the mere act of requesting a three year leave) rises to the level of that "conduct akin to bad faith" contemplated by *Gulf States*. However, "bad faith conduct might also be shown through requests for leaves of exceptional duration." *Gulf States*, 811 F.2d at 1470 n. 4.

It is thus clear that the court construed the length of the requested leave of absence in the context of the conduct prong which we articulated in *Gulf States*. We also think that the determination whether a three year leave was unreasonable was partially dependent upon the harm to the employer. Although the burden on the employer was partially weighted by the adoption of the statute by Congress, no one could doubt that a longer leave would inevitably be more burdensome on an employer than a short leave. This Court in *Gulf States* stated that "bad faith conduct might also be shown through requests for leave of exceptional duration." We hold, especially in light of the Supreme Court's statement

in *Monroe* that this section of the statute was passed "to deal with problems faced by employees who had military training obligations lasting less than three months," *Monroe*, 452 U.S. at 555, 101 S.Ct. at 2514, and, in view of the self-contradictory legislative history of the section, that it is appropriate for this Court to determine a definite limit beyond which any leave would be unreasonable.

No case has been called to our attention in which a leave of absence of as long as three years has been held protected under Section 2024(d). We, therefore, agree with the trial court that a three year leave of absence is *per se* unreasonable.

**B.** *Unreasonableness on Factors Present in this Case*

■ Moreover, even if we should find that the trial court erred in finding a three year leave *per se* unreasonable, we would nevertheless hold that on the facts of this case, considering the factors outlined in *Gulf States*, the judgment of the trial court should be affirmed.

## IV. CONCLUSION

The judgment is AFFIRMED.

RONEY, Senior Circuit Judge, specially concurring:

I agree with the Court's holding that Sky King's three-year leave request was unreasonable on the facts of this case. I dissent from the adoption of a per se rule. Not only is such a rule unnecessary to the resolution of this case, but it might work an injustice in some future case.

Appellant cites the case of *Lemmon v. Santa Cruz County, California*, 686 F.Supp. 797 (N.D.Cal.1988), which involved a three-year leave request originally made under section 2024(d). In *Lemmon*, a different statutory provision came to apply only after the reservist commenced active duty, and only because his duty assignment was changed. The *Lemmon* court nevertheless applied section 2024(d) case law, including this Circuit's reasonableness test, found a three-year leave *reasonable* on the

facts of that case and refused to adopt a three-years-is-per-se-unreasonable rule.

*Lemmon* illustrates that circumstances may arise in which three-year leave requests, even under section 2024(d), should be granted. In *Lemmon,* the reservist was a Sheriff's Office employee whose position the employer "was able to fill ... in one day by simply reassigning other personnel within the department." 686 F.Supp. at 802. The employer had initially approved the leave request. Yet, a three-year per se rule would have precluded the statutory relief to which the reservist was entitled.

Fairness dictates that each case be decided with due regard for the particular facts. While a bright-line rule certainly has the advantage of mechanical application, it seems unnecessary in the administration of this statute.