**Bobby Lee BARRON, Plaintiff,**

**v.**

**K–MART CORPORATION and Blue Cross and Blue Shield of Michigan, Inc., Defendants.**

**Civil Action No. CV 195–147.**

United States District Court, S.D. Georgia, Augusta Division.

Aug. 2, 1996.

Sam George Nicholson, Andrew Marshall Magruder, Augusta, GA, for plaintiff.

Benjamin Howard Brewton, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, Michael R. Hurst, William H. Major, Heyman & Sizemore, Atlanta, GA, for defendants.

## ORDER

BOWEN, District Judge.

Before the Court is Defendants' Motion for Summary Judgment in the above-captioned case. Upon consideration of the parties' briefs and oral arguments before this Court on June 18, 1996, the Motion for Summary Judgment is **GRANTED** for the reasons stated below.

## I. FACTS

Plaintiff Bobby Lee Barron has worked for Defendant K–Mart Corporation for over twenty years. In 1994, he was employed as an assistant manager of a K–Mart store in Augusta, Georgia. Plaintiff was enrolled in the employee welfare benefit plan that included health care and hospitalization benefits. This plan is self-funded by K–Mart and administered by Defendant Blue Cross and Blue Shield of Michigan, Inc. ("Blue Cross"). As claims administrator of the plan, Blue Cross is responsible for the review and evaluation of all medical claims. Specifically, Blue Cross determines the reasonableness of fees for covered services, and it decides to what extent in-patient hospital care meets the criteria for reimbursement under the plan.

On April 6, 1994, Plaintiff checked himself into the Augusta Regional Medical Center for alcohol dependency. Pursuant to the terms of K–Mart's employee welfare benefit plan, Plaintiff's medical provider contacted Blue Cross and requested authorization for Plaintiff's hospital stay. The plan specifically provides as follows:

> If a call for pre-certification is not made, or if your hospitalization exceeds the number of approved days, you may be required to pay all unprecertified Hospital room and board charges and Physician Inpatient medical visit costs if the Claims Administrator determines that the admission or additional length of stay does not meet the specific guidelines utilized by the Claims Administrator.
>
> However, you may still decide to enter the Hospital if the admission is denied. You will be responsible for paying the entire cost for Hospital room and board and the Physician's Inpatient medical visits.

(Defs.' Mot.Summ.J., Ex. B, Comprehensive Health Care Plan, at 26.) Blue Cross authorized benefits for four days of in-patient care. However, Blue Cross denied a subsequent request for authorization of an additional twenty-six days of hospitalization after Dr. Pang Man, a board-certified psychiatrist employed by Blue Cross as a consultant, reviewed Plaintiff's medical records. In Dr. Man's opinion, the additional in-patient care was not "medically necessary" and Plaintiff could receive proper care on an out-patient basis. Plaintiff appealed the denial of benefits but to no avail. Plaintiff filed the present suit, seeking payment for the additional twenty-six days of in-patient care.

In support of his demand for payment, Plaintiff has attached the affidavit of his treating psychiatrist, Dr. Andrew J. Hurayt, to his Brief in Opposition to the Motion for Summary Judgment. Dr. Hurayt attests that when Plaintiff was admitted, he was suffering from not only alcoholism but also severe depression which included homicidal and suicidal ideations. (Hurayt Aff. ¶ 8.) Dr. Hurayt had recommended that Plaintiff undergo detoxification for one week and then remain hospitalized for treatment of his depression. Dr. Hurayt states that Plaintiff's depression had been so severe that it required the constant monitoring provided by in-patient care. Also, Dr. Hurayt had prescribed the anti-depressant Paxil and had suggested to Plaintiff that in-patient care was necessary for him to fully reap the benefits of the medicine. (Id.) Thus, in Dr. Hurayt's opinion, the additional hospitalization was medically necessary. (Id. ¶ 9–10.)

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). When the moving party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party."

*United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

## III. DISCUSSION

The issue of the applicability of benefits as provided by the plan in this case is subject to and controlled by the statutory scheme of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The threshold question in this case concerns what standard of review should be applied to Blue Cross's denial of benefits. Once the standard of review is determined, the focus becomes whether there exists any genuine issues of material fact with regard to whether Blue Cross's decision to deny benefits meets the applicable standard.

### A. Standard of Review

A court must review *de novo* the denial of benefits under an ERISA plan "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), *quoted in Lee v. Blue Cross/Blue Shield of Alabama,* 10 F.3d 1547, 1549 (11th Cir.1994). In cases in which such discretionary authority is granted to the plan administrator, courts have applied the "arbitrary and capricious" standard of review to benefit decisions. *Lee,* 10 F.3d at 1550; *Anderson v. Blue Cross/Blue Shield of Alabama,* 907 F.2d 1072, 1076 (11th Cir. 1990).

In this case, the ERISA plan provides that Blue Cross, as plan administrator, has the discretion to determine whether in-patient care is "medically necessary," that is, necessary to provide "safe and adequate care" under the circumstances, before the Plaintiff may receive benefits for such care. Thus, both parties agree that the standard of review in this case is not *de novo.* However, Plaintiff argues the "arbitrary and capricious" standard is likewise inappropriate be-

cause Blue Cross has a conflict of interest and is unable to administer the plan fairly.

The "arbitrary and capricious" standard affords great deference to the decisions of a plan administrator. As long as an administrator's decision is reasonable, it will be upheld even if the decision is wrong. However, if the claims administrator is acting under a conflict of interest, this deference is greatly diminished. *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama,* 41 F.3d 1476, 1481 (11th Cir.1995) (citing *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57). The *Nightingale* court articulated the following burden shifting analysis to be used in such cases: "[I]f a conflict of interest is established, the burden shifts to the administrator to prove that his or her interpretation of the plan was not tainted by self-interest." *Id.* at 1481 (citation omitted).

In *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556 (11th Cir.1990), the court held that a conflict of interest exists where an insurance company which makes the claims decisions is also the entity responsible for paying the claims. *Id.* at 1561–62; *accord Anderson,* 907 F.2d at 1076. In *Nightingale,* however, the plan administrator processed claims for a *self-funded* health care plan. Nevertheless, the court upheld the finding of the district court that the plan administrator had a conflict of interest. *Nightingale,* 41 F.3d at 1482. Plaintiff cites *Nightingale* as controlling precedent, arguing that although K–Mart funds the plan administered by Blue Cross, Blue Cross still has a conflict of interest based on its business relationship with K–Mart.

A closer look at the facts of *Nightingale* shows that the case is inapposite to the case at bar. The plan administrator in *Nightingale,* Blue Cross/Blue Shield of Alabama, denied benefits to an AIDS patient under a plan funded by the patient's employer. *Nightingale,* 41 F.3d at 1478–79. This denial of benefits was the subject of litigation for two years before the claims were reviewed by a claims evaluator, Dr. Holloway.[1] The district court heard ample evidence that Dr. Holloway's review of the benefits claim was tainted by Blue Cross's in-house counsel. In fact, the in-house counsel edited Dr. Holloway's findings before they were released.[2] *Id.* at 1480. The district court also heard testimony concerning Blue Cross's desire to maintain its business relationship with the employer-insurer. *Id.* at 1481. Thus, the claims evaluator's decision to deny benefits was indirectly influenced by Blue Cross's financial interest and directly influenced by Blue Cross itself. In light of all this evidence, the Eleventh Circuit held that it could not overturn the district court's finding of a conflict of interest as clearly erroneous. *Id.* at 1482.

In the case at bar, Plaintiff has not submitted any evidence to support a similar finding that the plan administrator was laboring under a conflict of interest. Plaintiff only argues that it may be inferred that Blue Cross, as a business associate of K–Mart, would want to satisfy its client by paying fewer claims. This inference alone is not enough to establish a conflict of interest such that Blue Cross's seemingly objective decision to deny benefits should not be given the appropriate deference. Thus, the arbitrary and capricious standard is the proper standard of review.

### B. *Analysis*

A review of a denial of benefits under an ERISA plan is conducted under the arbitrary and capricious standard as follows:

[T]he function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.... As long as a reasonable basis appears for [the defendants'] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision.

*Jett v. Blue Cross & Blue Shield,* 890 F.2d 1137, 1139–40 (11th Cir.1989) (citations omitted). The decision must be sustained as a

---

1. The district court dismissed without prejudice the original action so that the plaintiff could pursue internal administrative remedies under the plan first. *Id.* at 1480.

2. The district court referred to the relationship between Dr. Holloway and Blue Cross's in-house counsel as "incestuous." *Id.* at 1480 n. 3.

matter of law unless the decision is arbitrary and without reasonable basis. *See Chilton v. Savannah Foods & Indus.*, 814 F.2d 620 (11th Cir.1987). Thus, even if the decision is wrong, it will be upheld if it is rational and in good faith.

■ The question now before this Court is whether Blue Cross had a reasonable basis to deny Plaintiff coverage for the additional in-patient care. When Blue Cross denied coverage, an in-house psychiatrist had reviewed Plaintiff's medical files, which included the admission notes of the day Plaintiff voluntarily admitted himself to the hospital. The admission notes state the following: "Patient admits to suicidal ideation and has specific plan, has numerous guns in the house, and has thought of actually shooting himself. He does not wish to do this. The patient denies homicidal ideation." Prior to his admission to the hospital, Plaintiff had no history of alcohol or drug treatment or of psychiatric care. Dr. Man, the in-house psychiatrist, stated in his affidavit that he recommended the authorization of the first four days of in-patient care for treatment. His recommendation included consideration of the need to monitor Plaintiff's suicide threat. (Man Aff. ¶ 5.)

However, the hospital notes also include notations which indicate that as early as April 8, two days after admission, Plaintiff denied suicidal tendencies and denied any physical complications or side effects from detoxification. Plaintiff was gradually gaining an appetite and did not have any seizures or tremors. Additionally, Plaintiff was attending all scheduled therapy sessions and demonstrated a proclivity to get the help he needed. In Dr. Man's opinion based on the medical record, the additional twenty-six days of in-patient care were not medically necessary to insure that Plaintiff received safe and adequate care because by April 9 his detoxification treatment was complete. *Id.* ¶ 7. Dr. Man opined that Plaintiff could receive the same level of treatment and care after this point on an out-patient basis because he did not require constant monitoring. *Id.* ¶ 8.

As discussed above, the medical notes are sufficient to support Dr. Man's assessment of Plaintiff's hospitalization needs.[3] Although there is evidence in the record of Plaintiff's suicidal ideations at the time of admission, as long as a reasonable basis exists for denying the challenged coverage, the denial must be upheld "even if there is evidence that would support a contrary decision." *Jett*, 890 F.2d at 1140. I find, therefore, that a reasonable basis existed for Blue Cross to deny benefits for the additional in-patient care based on the facts known to Blue Cross at the time the decision was made.

## IV.  CONCLUSION

For the reasons stated above, I cannot find that the decision to deny benefits to Plaintiff was arbitrary and capricious. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**. The clerk is instructed to **CLOSE** this case and **ENTER FINAL JUDGMENT** for Defendants, assessing costs against Plaintiff.

---

**3.** This assessment is clearly contrary to Dr. Hurayt's assessment as demonstrated by his affidavit. The medical opinions and information contained in Dr. Hurayt's affidavit were not in the record at the time the claims decision was made. Thus, I cannot consider this affidavit as evidence in my review of the decision. *Jett*, 890 F.2d at 1139.